121 N.J. Super. 378 (1972)
297 A.2d 207
ITALO D. SCERBO; EVA M. VANDERHOOF; MARY T. McKENNA; MARGARET T. COLLINS; AND JOSEPH J. BRENNAN, PLAINTIFFS,
v.
BOARD OF ADJUSTMENT OF THE CITY OF ORANGE; GEORGE MILES; KEVIN DONNELLY; CARL ZAZZARO; WILLIAM CASSINI; AND OLIVER SWENSON, AS MEMBERS OF THE BOARD OF ADJUSTMENT OF THE CITY OF ORANGE, CITY OF ORANGE, A MUNICIPAL CORPORATION, AND D.A.R.E., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 30, 1972.
*379 Mr. Thomas Grant Bernard appeared for plaintiffs (Messrs. Bernard, Netchert & Silverlieb, attorneys).
Mr. Alfonso C. Viscione appeared for defendants Board of Adjustment of the City of Orange, George Miles; Kevin Donnelly; Carl Zazzaro; William Cassini and Oliver Swenson, as members of the Board of Adjustment.
Mr. Barry R. Mandelbaum appeared for defendant D.A.R.E., Inc. (Messrs. Mandelbaum, Mandelbaum & Gold, attorneys).
MILMED, J.S.C.
Is a residential narcotic rehabilitation and treatment center which is governed by the *380 provisions of L. 1970, c. 334 (N.J.S.A. 26:2G-21 et seq.) a "hospital," qualified as an "institutional" use under the terms of the local zoning ordinance? Did the local zoning board have jurisdiction to grant a variance where the notice to neighboring property owners under N.J.S.A. 40:55-44 made no specific mention that a "variance" was being sought? These are two of the principal issues to be determined in this action in lieu of prerogative writs.
Defendant, D.A.R.E., Inc. (Drug Addiction Rehabilitation Enterprise, Inc.) seeks to operate within the City of Orange a narcotic and drug abuse rehabilitation and treatment center governed by the provisions of L. 1970, c. 334 (N.J.S.A. 26:2G-21 et seq.). The essential facts are not in dispute. In the spring of 1971 it (D.A.R.E.) purchased the premises at 19 High Street in Orange, New Jersey, formerly occupied by the Y.W.C.A. The land is irregularly shaped, and the building is a three-story frame structure. In the fall of 1971 it submitted to the building inspector of the City of Orange plans for extensive alteration of the building. By letter of October 14, 1971 the building inspector advised, among other things, that it was his interpretation of the local building code,
* * * that the building when altered according to your plans, would meet the requirements of the Building Code of the City of Orange, for Institutional Uses.
This is to further advise you that the Building Department will issue a permit according to the plans submitted by you, subject to the provisions of an amendment to the Zoning Ordinance of the City of Orange number 1083-G13-M10, which we had discussed as of this date.
Application was thereupon made by D.A.R.E. to the Board of Adjustment of the City of Orange for approval of the issuance of a permit for the alteration of 19 High Street, Orange, New Jersey, for a residential treatment center pursuant to local zoning ordinance amendment 1083-G13-M10. The application sets forth a brief description of *381 the premises[1] and discloses that "The lot size is less than one acre and the principal structure is located within 25 feet of side property lines."
Notice was given by certified mail, return receipt requested, to the property owners within 200 feet of the subject property. The notice sets forth the time and place of public hearing before the board of adjustment "for approval pursuant to Zoning Ordinance Amendment No. 1083-G13-M10 for the use of the subject premises as a residential treatment center for drug dependent persons," and also a brief description of the premises owned by Drug Addiction Rehabilitation Enterprise, Inc. and located at 19 High Street, Orange, New Jersey.
After extensive hearings before the board of adjustment, the board on February 9, 1972 adopted its resolution, which is sought to be set aside in this action, granting a special exception (N.J.S.A. 40:55-39(b)) and variance (N.J.S.A. 40:55-39(c)) for the use of the premises as a residential drug rehabilitation center, a facility "to fulfill the need for resident drug rehabilitation for all Orange drug dependent residents who would qualify and benefit from this form of rehabilitation."
In its resolution the board found, in substance, that D.A.R.E. satisfies the definition of a hospital under the amendatory zoning ordinance 1083-G13-M10; that it is an institution for the rehabilitation of drug dependent persons; that it is a therapeutic community; that the existing building on the premises has been used as a residence since 1917; that "it would be impractical and a hardship to insist on the side yard requirement as there would be no way to conform with the requirements of the ordinance"; that D.A.R.E. "attempted to purchase additional property and has been refused"; that by reason of the exceptional situation and condition of the property, strict application of the lot size *382 and side yard requirements of the ordinance "would undoubtedly deprive the owners of the reasonable use of the property and result in exceptional and undue hardship upon the owners of the property" and be contrary to the public good; that there is a drug abuse problem in Orange; that D.A.R.E.'s drug rehabilitation program meets a pressing social need; that implementation of the educational program provided by D.A.R.E. would aid in combating the growing abuse of drugs; that D.A.R.E. maintains adequate safeguards, including the screening of proposed residents and the maintenance of a drug-free atmosphere, with frequent urine testing and half-hour bed checks; that fear that the general welfare, morals, health and safety of the surrounding neighborhood would be adversely affected has been unsubstantiated; that the City of Orange would not be acting "for the common good if it allowed fear of the problem to hinder adequate and reasonable attempts at its solution"; that the relief applied for by D.A.R.E. "can be granted without substantial detriment to the public good and will not be detrimental to the health, safety and general welfare of the community, and that the drug problem in Orange is real, critical and urgent and requires immediate attention"; that the premises are located in a residential area, as the term is used in amendatory zoning ordinance 1083-G13-M10; that D.A.R.E. has met the burden of proof imposed upon it under the terms of this amendatory zoning ordinance and N.J.S.A. 40:55-39(c), and that adequate notice was given to the neighboring property owners. By its resolution, the board granted the application by D.A.R.E. for the use of the premises as a drug rehabilitation center, as well as relief from the minimum lot size and side yard requirements of the amendatory ordinance, i.e., ordinance 1083-G13-M10.
Plaintiffs contend that an "institutional" use is not permitted in the applicable "B-3 High-Rise Apartment and Office District" in the municipality; that the proposed residential treatment center for drug dependent persons is not *383 a "hospital" qualified as an "institutional" use under the terms of the applicable local zoning ordinance, i.e., ordinance 1083-G13-M10; that if the proposed center is an "institutional" use, D.A.R.E., in regard to this facility, is governed by, and has not complied with, the provisions of N.J.S.A. 30:11-1 et seq., relating to the licensing and regulation of private hospitals; that the notice by D.A.R.E. to neighboring property owners under N.J.S.A. 40:55-44 was not adequate to provide the board of adjustment with jurisdiction to grant the variance; and that the action of the local board of adjustment in granting the special exception and variance was arbitrary, capricious and unreasonable.[2]
It is undisputed that the property owned by D.A.R.E. at 19 High Street in Orange is located in a "B-3 High-Rise Apartment and Office District" in the municipality. Article XIXA of the local zoning ordinance, which was added by amendment approved January 9, 1970, sets forth, among other things, the permitted and prohibited uses in this district. In specifying the uses permitted in the district, which include "multi-family dwellings with a minimum height of six stories," section 19A.1 declares that, "This zone district allows the most intensive residential use in the City and business and professional offices." Section 19A.2 prohibits in the district "Combined apartment and office buildings * * * except that medical offices shall be allowed to occupy not over 10 per cent of the building floor space."
*384 Describing the area surrounding the subject premises at the initial hearing before the board of adjustment, Anthony Church, an architect testifying in support of the application by D.A.R.E., pointed out that the building at 19 High Street would be in line with the surrounding buildings, and that
From the street, as you face the building on the right-hand side is a high-rise brick apartment. To the left is the Orange Savings Bank, and across the street there is a doctor's office and there are stores. It is completely a commercial type area as far as that is concerned, and it completely blends as far as the area is concerned, and it would not be an eyesore as far as standing out as being an institution type building. There are commercial businesses, residences, and a high-rise, and it is completely a diverged area as far as that is concerned.
Ordinance 1083-G13-M10 of the City of Orange, approved May 6, 1964, referred to in the application of D.A.R.E. to the board of adjustment, also amends the local zoning ordinance. Section 1 defines "Institutional Uses" as,
Non-profit institutions limited to churches, schools teaching academic subjects, hospitals, public libraries, museums, art galleries and city buildings.
Section IV of this amendatory ordinance provides that "Institutional uses may be located in any business or industrial zone," and that "Said uses are also permitted in any residential zone." (Emphasis added). The same section sets forth certain requirements to be met by every institutional use permitted in the city after the enactment of the amendment, including that there be "a minimum lot size of 1 acre," and that "No principal structure shall be located within 25 feet of any side property line." The section also provides: that an institutional use "shall only be permitted as a `special exception' pursuant to N.J.S. [A.] 40:55-39(b)"; that a site plan of the proposed use, including certain specific data, be submitted to the board of adjustment, and that sufficient additional data be provided as specified by the board of adjustment *385 to enable the board to determine compliance with requirements of the zoning ordinance "and to determine the best possible physical layout for the proposed use from the standpoint of its relationship to the general health, safety and welfare of the City of Orange." Before approving any such use the board is required to "assure itself or require proper guarantees that the location of the proposed use will not be detrimental to the public health, safety, morals and general welfare of the community."
As indicated, by the express terms of the amendatory zoning ordinance referred to in the application by D.A.R.E. (ordinance 1083-G13-M10), an institutional use may be located or permitted in any residential, business or industrial zone in the municipality if allowed by the municipal board of adjustment under the amendatory ordinance and as a "special exception" pursuant to N.J.S.A. 40:55-39(b). "Any" residential zone undoubtedly means and includes a residential zone of whatever kind. The "B-3 High-Rise Apartment and Office District" is essentially a residential zone in which the land use is limited to certain multi-family dwellings and professional and business uses. Any institutional use, as defined in ordinance 1083-G13-M10, may accordingly be located in such district when approved by the local board of adjustment pursuant to that ordinance.
The proposed residential narcotic rehabilitation and treatment center is a "hospital," and as such qualifies as an "institutional" use under the terms of ordinance 1083-G13-M10. The parties concede that D.A.R.E. is governed by the provisions of L. 1970, c. 334 (N.J.S.A. 26:2G-21 et seq.) That statute defines the term "Narcotic and drug abuse treatment center," as used in the legislation, to mean
any establishment, facility or institution, public or private, whether operated for profit or not, which primarily offers, or purports to offer, maintain, or operate facilities for the residential or outpatient diagnosis, care, treatment, or rehabilitation of two or more nonrelated individuals, who are patients as defined herein, excluding, however, any hospital or mental hospital otherwise licensed by Title 30 of the Revised Statutes. [N.J.S.A. 26:2G-22(a)] *386 N.J.S.A. 26:2G-22(b) defines the word "patient," as used in the legislation, to mean
a person who is addicted to, or otherwise suffering physically or mentally from the use, or abuse of, narcotic drugs and who requires continuing care of a narcotic and drug abuse treatment center.
A hospital is defined as "An institution for the reception and care of sick, wounded, infirm, or aged persons; * * *." Black's Law Dictionary (4th ed. 1951), at 871. See also, 41 C.J.S., Hospitals, § 1 at 331. The record before the board of adjustment clearly establishes that the proposed treatment center falls within this definition of a hospital, namely, an institution for the reception and care of sick persons. Drug addiction is a "disease" recognized as such by the Legislature. See N.J.S.A. 26:2G-1. "Most frequently, it connotes physical dependence, resulting from excessive use of certain drugs." Report of the President's Commission on Law Enforcement and Administration of Justice (February, 1967), The Challenge of Crime in a Free Society, at 212. Dr. Eugene Sims, a physician, medical director of D.A.R.E., testifying before the board in support of the application, referred to drug addiction as "the number one mental health problem in America." A recent editorial in the New Jersey Law Journal observes that "* * * the drug disease is fast becoming a plague and, if left unchecked, may soon destroy our society," and that "The problem is primarily a social and medical one." "Drug Abuse  A Challenge to Our Society," 95 N.J.L.J. 484 (May 18, 1972).
Under the applicable legislation, N.J.S.A. 26:2G-23, no narcotic and drug abuse treatment center is permitted to operate within the State except pursuant to a certificate of approval obtained from the Commissioner of the State Department of Health upon application made therefor pursuant to the terms of the statute (L. 1970, c. 334). The trial brief submitted on behalf of D.A.R.E. indicates that such certificate has been applied for by it. Under such certificate, which is a prerequisite to its operation at the subject premises, *387 D.A.R.E. would accordingly be under the supervision of the State Commissioner of Health and required to comply with the rules, regulations and minimum standards of treatment of patients as promulgated by the Commissioner. N.J.S.A. 26:2G-25. Additional safeguards are provided in the legislation. Thus, N.J.S.A. 26:2G-26 provides that
The commissioner shall make or cause to be made such inspection of the premises, for which a certificate of approval has been issued, from time to time, as he may deem necessary to be assured that the holder thereof and the premises comply at all times with the provisions of this act and the rules and regulations promulgated, and the minimum standards established hereunder.
And N.J.S.A. 26:2G-27 provides, in part, that
The commissioner after a hearing may deny, revoke, or suspend any certificate of approval granted under authority of this act to any person, firm, partnership, corporation or association violating the provisions hereof or the rules and regulations promulgated hereunder.
In regard to safeguards maintained at a D.A.R.E. operated residential treatment center, Dr. Sims explained his duties in connection with the operation of the D.A.R.E. residential treatment center on Littleton Avenue in Newark, stating:
My duties are, number one, to prevent the development of illness for the residents in the Therapeutic Community on Littleton Avenue in Newark, to treat illnesses and to provide for the necessary physical examinations performed on the applicants accepted for admission by the Newark Health Department.
I inspect the facility as to cleanliness, sanitation, ventilation and with particular reference to the sanitation of the cooking and dining facilities and as to the sleeping accommodation areas * * * And I'm also involved in the detoxification of the applicants to the Therapeutic Community prior to their acceptance in the program.
Dr. Sims also explained the urinalysis program at the institution, pointing out that urinalyses of residents are taken "Two or three times a week as a rule, and whenever indicated."
*388 The facility proposed to be conducted as a residential narcotic rehabilitation and treatment center by D.A.R.E. at 19 High Street in Orange, being a "hospital" qualified as an "institutional" use under the terms of the applicable local zoning ordinance and governed by the provisions of L. 1970, c. 334 (N.J.S.A. 26:2G-21 et seq.), and accordingly under the supervision of the State Commissioner of Health, does not come within the definition of a "private hospital" as set forth in chapter 11 of Title 30 of the Revised Statutes, as amended, relating to the licensing and regulation of private hospitals.[3] In this respect, N.J.S.A. 30:11-8 provides in its opening paragraph:
A private mental hospital, private nursing home, convalescent home or private hospital, for the purpose of this chapter, is defined as any institution, whether operated for profit or not, which is not maintained, supervised or controlled by an agency of the government of the State or of any county or municipality, and which maintains and operates facilities for the diagnosis, treatment or care of 2 or more nonrelated individuals, who are patients as defined herein. [Emphasis added]
Neither the application filed by D.A.R.E. with the board of adjustment nor its notice to adjoining property owners used the term "special exception" or "variance." In the circumstances of the case, the use of this exact terminology was not required. Here, both the application and the notice clearly specified the relief which was being applied for. The application sought approval of the issuance of a permit for the alteration of 19 High Street in Orange "for a residential treatment center." The application set forth a brief description of the premises and expressly stated that "The lot size is less than one acre and the principal structure is located within 25 feet of side property lines." The notice of hearing given by D.A.R.E. to the neighboring property *389 owners was in compliance with N.J.S.A. 40:55-44. It also complied with the requirements of N.J.S.A. 40:55-53 that "The notice shall contain a brief description of the property involved, its location, a concise statement of the matters to be heard and the date, time and place of such hearing."[4] It set forth the date, time and place of the public hearing scheduled before the board, a brief description of the premises involved, its location, i.e., 19 High Street, Orange, New Jersey, and a concise statement of the matter to be heard before the board, i.e., "* * * the use of the subject premises as a residential treatment center for drug dependent persons." In light of the contents of the application and notice, the board properly treated the application as if made both for a "special exception" under ordinance 1083-G13-M10 and N.J.S.A. 40:55-39(b) and for a "variance" under N.J.S.A. 40:55-39(c). Cf. Gougeon v. Stone Harbor, 52 N.J. 212, 218 (1968). Notice of the date, time and place of hearing and of the relief sought was also published in the Orange Transcript.
The notice provided was sufficient to alert the neighboring landowners to the relief sought by D.A.R.E. The essence of the notice was that board of adjustment action was requested to permit the use of premises located at 19 High Street in Orange, New Jersey, as a residential treatment center for drug dependent persons. Any person opposed to or in favor of the proposed use was accordingly given adequate notice of the purpose of the hearing and of the subject of the hearing. See Healy v. Board of Appeals of Watertown, 356 Mass. 130, 248 N.E.2d 1 (Sup. Jud. Ct. *390 1969), and Carson v. Board of Appeals of Lexington, 321 Mass. 649, 75 N.E.2d 116 (Sup. Jud. Ct. 1947). See also Annotation, "Construction and Application of Statute or Ordinance Provisions Requiring Notice as Prerequisite to Granting Variance or Exception to Zoning Requirement," 38 A.L.R.3d 167, 229.
Exact terminology is not required in zoning cases. Courts will treat the matter for what it really is, notwithstanding the terminology used. [Root v. City of Erie Zoning Board of Appeals, 180 Pa. Super. 38, 118 A.2d 297, 299 (Super. Ct. 1955)]
The initial hearing before the board of adjustment was held in compliance with the notice to neighboring property owners. At each hearing public announcement was made as to the time and place for the next meeting. It appears from the record before the board that full opportunity was afforded to any proponent or objector to be heard. The hearings before the board were in accord with the notices sent to the property owners situated within 200 feet of the subject property. As to these property owners the requirements of the statutes as to notice were met. See Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268, 277 (1965).
The grant of a special exception under the terms of the local zoning ordinance and N.J.S.A. 40:55-39(b), and the grant of a variance under N.J.S.A. 40:55-39(c), are each subject to the negative criteria set forth in N.J.S.A. 40:55-39, i.e., that
No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance.
And, the variance contemplated by N.J.S.A. 40:55-39(c) may be granted
Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or by reason of exceptional topographic *391 conditions, or by reason of other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under the act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the owner of such property * * *; provided, however, that no variance shall be granted under this paragraph to allow a structure or use in a district restricted against such structure or use.
Here, the essential findings of the board and its determination to grant the special exception and variance are well grounded in the extensive record before the board. The action of the board was not arbitrary, capricious or unreasonable, or in manifest abuse of its discretionary authority. There was no evidence before the board showing that allowing the proposed use of the premises as a residential narcotic rehabilitation and treatment center would "substantially impair the intent and purpose of the zone plan and zoning ordinance." Cf. Kunzler v. Hoffman, 48 N.J. 277, 285 (1966).
The proofs amply established that there is a drug abuse problem in Orange requiring the implementation of an effective drug rehabilitation and treatment program, and that the proposed institutional use is "essential or desirable for the welfare of the community and its citizenry or substantial segments of it, * * *" and "entirely appropriate and not essentially incompatible with the basic uses * * *" in the B-3 High-Rise Apartment and Office District in the area surrounding the subject premises. See Tullo v. Millburn Tp., 54 N.J. Super. 483, 490 (App. Div. 1959).
Benjamin F. Jones, a commissioner of the City of Orange, testifying in support of the application, pointed out that
I organized the Drug Abuse Council in the City of Orange with the hope that this organization would direct and establish an appropriate drug abuse program for the City. At the time of this organization our initial concern was to provide the earliest possible effective program for the problem that was upon us.
The Council investigated a number of areas that provided this type of service, and after these investigations and interrogations, we decided that D.A.R.E. was the program that came nearest to the program that we felt would meet our needs in Orange. We *392 thought it would not be appropriate for the Drug Abuse Council to wait until such time as each of us became a so-called expert on drug abuse and then to initiate such a program. We recommended that a contract, renewable on an annual basis with D.A.R.E. be effected, * * *.
Joseph B. McCartney, Jr., an independent real estate appraiser, testifying in opposition to the application, commented that
* * * There is, of course, a great deal of misunderstanding about what this is to be used for, nevertheless, the fear is there and the fear is real, and I do believe that if D.A.R.E. was allowed to use these premises for this reason, that it would be detrimental to the area. * * *
He stated that his "personal belief" was
* * * that if D.A.R.E. is located at 19 High Street, that people will be afraid to come into this area, that it will contribute to the decline of the area itself and the possible rebuilding of the area. In commenting on the type of fear expressed to him he stated,
They are afraid of drug addicts, they believe that drug addicts are harmful to them, that they are going to hurt them physically. They are afraid of them, and they don't want them there.
The record before the board, however, fails to substantiate such fears as applied to the proposed D.A.R.E. residential treatment center. According to Dr. Sims,
The addict in a good rehabilitation program is in a therapeutic community and cannot commit crimes. Other addicts who are out in the streets and maybe those who are just involved in the Out Reach Program, those are the ones that are committing the crimes. * * *
People have suggested that we try and put these centers out in the country, they will get more fresh air. It is like you are saying let's put a hospital out in the country, but the disease is in the cities and it is here in the streets of Orange, it is not out in the country. Let's have the treatment facilities available for the sick people where ever the people are sick.
The evidence before the board supports its finding that the municipality would not be acting "* * * for the common *393 good if it allowed fear of the problem to hinder adequate and reasonable attempts at its solution."
In light of the critical problem of drug dependent persons existing in the municipality, the necessity of providing a drug rehabilitation center to meet their needs, and the exceptional situation and condition of the property, all referred to in the board's resolution, its finding that strict application of the lot size and side yard requirements of the zoning ordinance would result in exceptional and undue hardship upon the owner of the property and would be contrary to the public good, is eminently sound. The cited negative criteria set forth in N.J.S.A. 40:55-39 have been satisfied. The record before the board sufficiently demonstrates that exceptional and undue hardship, resulting from the exceptional shape of the property described in the application and the unavailability of adjacent or contiguous land with which to enlarge the premises, would be visited upon the applicant if an exception and variance were denied. Cf. 165 Augusta Street, Inc. v. Collins, 9 N.J. 259 (1952), and Gougeon v. Stone Harbor, supra, and the same case at 54 N.J. 138 (1969).
In Bove v. Bd. of Adjust., Emerson, 100 N.J. Super. 95 (App. Div. 1968), the court points out:
As stated in Kramer v. Bd. of Adjust., Sea Girt, supra, 45 N.J., at p. 296, public bodies because of their peculiar knowledge of local conditions must be allowed wide latitude in their delegated discretion. See also Booth v. Bd. of Adjust., Rockaway Tp., 50 N.J. 302, 306 (1967). Furthermore, there is attached to a decision of the board a presumption of correctness, fairness and proper motive and the burden of proving otherwise is on the party attacking it. Kramer v. Bd. of Adjust., Sea Girt, supra, 45 N.J., at p. 285; Ardolino v. Florham Park Board of Adjustment, supra, 24 N.J. at p. 105; Yahnel v. Bd. of Adjust. of Jamesburg, 79 N.J. Super. 509, 517 (App. Div. 1963), certification denied 41 N.J. 116 (1963); Holman v. Bd. of Adjustment, Norwood, supra, 78 N.J. Super. at p. 79 [at 102]
Plaintiffs have failed to sustain that burden.
This court is satisfied from the record before the zoning board of adjustment and the argument of counsel at the *394 hearing in this action that the board properly reached its determination to grant the special exception and variance for the use of the premises as a residential drug rehabilitation center. The determination of the zoning board on the application of D.A.R.E. is affirmed.
NOTES
[1] By dimensions, i.e., 71.61' x 243.14' x 126.78' x 72.86' x 54.67' x 170.10'.
[2] In their complaint and at the pretrial conference plaintiffs additionally contended that the determination of the local zoning board should be set aside by reason of an alleged conflict of interest on the part of two members of the board of adjustment. However, that contention was withdrawn by plaintiffs at the hearing in this court after they had taken the depositions of the two members of the board upon oral examination.

No claim was asserted or relief sought by plaintiffs in their complaint in this action against defendant City of Orange. Accordingly, after hearing on motion, the application of the city for summary judgment in its favor dismissing the complaint as to it, was granted.
[3] Functions transferred from the State Department of Institutions and Agencies to the State Department of Health by L. 1971, c. 136, §§ 19, 22 and 23. (N.J.S.A. 26:2H-19, 26:2H-22 and 26:2H-23).
[4] High Street in Orange is a county road. Under the circumstances, notice of hearing before the local zoning board of adjustment was required to be given to the county planning board. N.J.S.A. 40:55-53. While this requirement was not complied with, the record filed in this action indicates that, subsequent to the zoning board resolution of February 9, 1972, the Planning Board of Essex County reviewed the application by D.A.R.E. and found "no objection to this application."