189 N.J. Super. 332 (1983)
460 A.2d 152
L & L CLINICS, INC., ET AL., PLAINTIFFS-APPELLANTS,
v.
TOWN OF IRVINGTON ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1983.
Decided March 24, 1983.
*333 Before Judges ARD, KING and McELROY.
William J. Martini argued the cause for appellants.
Henry E. Rzemieniewski argued the cause for respondents (Alan A. Siegel, attorney).
The opinion of the court was delivered by KING, J.A.D.
This case concerns the right of a physician and his professional corporation to a certificate of occupancy to operate a privately owned, professional office for use as a clinical facility for methadone maintenance treatment of heroin addicts in the Primary Business District (B-1) of the Town of Irvington. The Law Division granted summary judgment in favor of the town, ruling that the proposed use was not permitted by the zoning ordinance in the B-1 district but required a special use or conditional permit. See N.J.S.A. 40:55D-67. We reverse and order the town to issue the requested certificate of occupancy.
Plaintiff, Dr. LaMorgese, a medical doctor and specialist in internal medicine licensed by New York and New Jersey, is the majority stockholder in plaintiff L & L Clinics, Inc. On February 25, 1982 he leased premises at 57-59 New Street in the B-1 district in Irvington. On March 3 he applied for an occupancy permit for "medical professional offices" to be operated from 7 a.m. to 5 p.m. The premises had previously been used for professional offices for the board of education and had been vacant since 1979. On March 10 an occupancy permit was issued.
*334 On May 6 the permit was rescinded in writing because Dr. LaMorgese failed "to state on your application that your basic intention was to establish a methadone clinic for treatment of problems resulting directly from heroin." On May 25 the municipal council of Irvington, a town of 61,500 bordering on the City of Newark, passed an unanimous resolution which concluded
NOW THEREFORE BE IT RESOLVED BY THE MUNICIPAL COUNCIL OF THE TOWNSHIP OF IRVINGTON that:
1. There is no need for a Methadone Clinic in the Township of Irvington.
2. Irvington refuses to be the center of treatment to Heroin and Cocaine drug addicts drawn from all the other municipalities in Essex County.
3. Irvington is a Township of families and children who should not be exposed to the fear and hazard which occur in locations which do have such clinics.
4. The Regional Health Planning Council be advised that the Township of Irvington strongly opposes the application to establish a Methadone Maintenance Clinic at 57-59 New Street, Irvington, New Jersey.
As further background, since 1977 Dr. LaMorgese has been the Director of the Main Street Clinic in Paterson, a methadone maintenance program operated under the auspices of the State Department of Health. In 1982 he received a certificate of need from the State Department of Health for the proposed Irvington facility on New Street. When granting the State's certificate of need, Dr. Koplin of that Department stated:
In accordance with the provisions of N.J.S.A. 26:2H-1, et. seq., and consistent with the recommendation of the Statewide Health Coordinating Council, I am approving your request for a Certificate of Need as contained in your project application which was submitted for processing in the review cycle of April 15, 1982. The basis for this approval includes the following reasons:
1. According to the 1979 New Jersey Combined Alcohol and Drug Abuse State Plan, Essex County has the highest drug use rate in the State and this rate exceeds that of the highest standard metropolitan statistical area (SMSA) in the country.
2. This project has the potential to reduce the burden on existing clinics in the area, specifically the Newark clinics.
3. There is a waiting list of 252 Essex County patients anticipating methadone maintenance treatment.
The uses permitted by the Irvington zoning ordinance in B-1, Primary Business District, were:

*335 608.1 Permitted Uses.
608.1-1 Retail outlet and personal service uses as, or similar in nature to:

a. Grocery & Drug Stores
b. Dry Goods stores
c. Meat and Poultry stores
d. Package liquor stores
e. Baked goods stores
f. Flower shops
g. Confectionery stores
h. Household supplies and variety stores
i. Furniture and appliance stores
j. Stationery supplies and book stores
k. Haberdashery, apparel and jewelry stores
l. Hardware, plumbing supplies and electrical appliance stores
m. Automobile sales and/or service business establishment
n. Banks and fiduciary institutions
o. Indoor recreation facilities
p. Passenger terminal facilities
q. Public garages and parking lots
r. Barber or beauty shops
s. Music and dancing schools
t. Dry cleaning or tailor shops
u. Self-service laundry
v. Shoe Repair shops
w. Business and professional offices

x. Musical instrument store
y. Radio, electrical and watch repairings establishments
Up to fifty (50) percent of the building area may be devoted to the processing, manufacture or storing of goods or products to be retailed on the premises provided that no such area shall front on a public street at street level.
608.1-2 Municipal Buildings and other governmental and/or public uses as deemed necessary and approved by the Planning Board and Governing Body. [Emphasis supplied]
These uses are not more specifically defined in the ordinance. Special uses are
608.3 Uses Permitted with Special Use Permit.
608.3-1 Public utilities
608.3-2 Hospitals, philanthropic or eleemosynary uses
608.3-3 Public and quasi-public buildings
Prohibited uses are
608.5 Uses not permitted
608.5-1 Bingo Hall or Bingo Games or similar Games of Chance, or Dance Halls. *336 608.5-2 Billiard Parlors. 608.5-3 Pawn Brokers.
Other, less varied and less intense, commercial and business zones in Irvington are BR-1, business residential; B-2, local business and B-3 research and office building districts. B-1 permits the greatest variety of commercial uses in Irvington. No other zoning district would permit the operation of a physician-staffed methadone maintenance clinic.
On the cross-motions for summary judgment the Law Division judge concluded that a methadone clinic was more like a hospital than the traditional physician's office and upheld the denial of a certificate of occupancy. Thus, a special use permit or variance would be required for the proposed use.
Generally speaking, "[T]he aim of the court in construing ordinances, like statutes, is to determine the legislative intent." Place v. Saddle River Bd. of Adj., 42 N.J. 324, 328 (1964). Zoning ordinances must receive a reasonable construction, under N.J. Const. (1947), Art. IV, § VII, par. 11; indeed they are to be liberally construed in favor of a municipality. Ibid.; see Home Builders League of So. Jersey v. Berlin Tp., 81 N.J. 127, 137 (1979).
Our research reveals no persuasive or even closely analogous authority on the troublesome issue before us. In Scerbo v. Orange Bd. of Adj., 121 N.J. Super. 378, 393 (Law Div. 1972), Judge Milmed held that a residential narcotic rehabilitation and treatment center was a "hospital" and qualified as an "institutional" use under the local zoning ordinance, thus permitting grant of a variance or special use permit. The result in Scerbo does suggest that a nonresidential outpatient treatment facility operated during business hours is more "similar in nature to ... a professional office," in the words of § 608.1-1(w) of the Irvington ordinance, than to a traditional hospital operation which functions 24 hours a day, feeds and houses patients and some staff, and is tax-exempt.
*337 People ex rel. D'Iorio v. Alfa Realty Co., 69 Misc.2d 475, 330 N.Y.S.2d 403 (City Ct. 1972), involved a prosecution for violation of a zoning ordinance in the Bronx. Defendant was found guilty of operating a methadone clinic, a "hospital" operation and a prohibited use, in a business zone. Id., 330 N.Y.S.2d at 407-408. The clinic was operated and supervised by a local hospital and thus was actually an accessory use to the hospital. Additional tangential authorities include County of Lake v. Galeway Houses Found., Inc., 19 Ill. App.3d 318, 311 N.E.2d 371, 376-377 (App.Ct. 1974) (facility not administering medical and psychiatric treatment but emphasizing change in values and attitudes was a permitted "shelter-care home" and not an expressly prohibited hospital or drug treatment center); Slevin v. Long Island Jewish Med. Center, 66 Misc.2d 312, 319 N.Y.S.2d 937, 946 (Cty.Ct. 1971) (maintenance of a drug center on church property by church and hospital jointly, held religious use); Swift v. Zoning Hearing Bd. of Abington Tp., 16 Pa. Commw. Ct. 356, 328 A.2d 901, 903 (Commw.Ct. 1974) (a half-way house for education and counseling on the dangers of drug abuse was a permitted "community center" use and not a prohibited "hospital"); see Framingham Clinic v. Zoning Bd. of App., 382 Mass. 283, 415 N.E.2d 840, 846-848 (Sup.Jud.Ct. 1981) (a clinic providing gynecological services, including abortion, held a permitted use in a district permitting both physician's professional offices and private hospitals).
Dr. LaMorgese rests his argument on the plain reading of section 608.1-1. He contends that operation of a physician-staffed methadone maintenance facility strictly for physical examination of outpatients, counseling and dispensation of medicine during normal business hours is within any reasonable construction of the professional office use permitted in the B-1 zone, especially considering the overall character of the zone. Section 608.1-1 lists a number of permitted uses, including drug, food, liquor and dry-good stores, automobile sales and service establishments, banks, passenger terminal facilities, public garages, parking lots and governmental uses, as well as "Business *338 and professional offices." Indeed, 50% of a building area in B-1 may be used for processing or manufacturing goods to be sold on the premises.
Even though extensively enumerating specific permitted uses, § 608.1-1 is not an exhaustive list of permitted uses but is only illustrative. The section permits "personal service uses as, or similar in nature to" professional offices. The prohibited uses, such as bingo halls, games of chance, dance halls, billiard parlors, and pawn brokers, bear no resemblance to the clinical treatment facility operated by a physician solely for outpatients here proposed. Further, we find in the proposed use no resemblance to a hospital, a 24-hour residential medical facility of considerably greater intensity of use and impact on the community. We conclude that Dr. LaMorgese's proposed clinical facility is more rationally categorized within conventional understanding as a "personal service use ... similar in nature to ... a professional office" under § 608.1-1(w), than within the conventional understanding of a "hospital" use requiring a special permit.
The public policy of this State to "encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare" supports this interpretation of the Irvington ordinance. See N.J.S.A. 40:55D-2(a) (purpose of Municipal Land Use Act). In addition, the Legislature has declared in the Health Care Facilities Act of 1971, N.J.S.A. 26:2H-1 et seq., it to be
... the public policy of the State that hospital and related health care services of the highest quality, of demonstrated need, efficiently provided and properly utilized at a reasonable cost are of vital concern to the public health. [N.J.S.A. 26:2H-1]
To that end a health care facility such as an outpatient drug rehabilitation clinic is required to obtain a certificate of need from the State Department of Health. See N.J.S.A. 26:2H-2(a) and N.J.S.A. 26:2H-7; N.J.A.C. 8:33-1.4, Exhibit 2. We note that although a physician's private practice is exempt from the *339 certificate requirement, N.J.S.A. 26:2H-2(b), ambulatory care facilities for pediatric, dental, family planning, pre- and post-natal, surgical, family practice, and renal dialysis services, and for health maintenance organizations, require certificates, just as drug rehabilitation centers do. N.J.A.C. 8:43A-1.1 et seq. The standards for operating methadone detoxification or methadone maintenance programs are set forth in N.J.A.C. 8:43A-9.1 et seq.[1] The issuance of a certificate of need signifies that the proposed facility is "necessary to provide required health care and service in the area to be served, can be economically accomplished and maintained, and will contribute to the orderly development of adequate and effective health care services." N.J.S.A. 26:2H-8. When, as in this case, the need for a health care facility has been demonstrated and a certificate of need issued, public policy supports a reasonable interpretation of a municipal zoning ordinance which permits the use. Cf. Scerbo, supra, 121 N.J. Super. at 393 (considering the need for the drug rehabilitation center in the municipality). "[A] zoning regulation, like any other police power enactment, must promote public health, safety, morals or general welfare." South Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp., 67 N.J. 151, 175, app. dism. *340 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975), reaff'd 92 N.J. 158, 208-209 (1983).
We therefore hold that the plaintiffs-appellants are entitled to a certificate of occupancy. We reject as unreasonably rigid the exclusionary interpretation which the Town of Irvington has placed on the words "personal service uses ... similar in nature to ... professional offices" in its prime business zone in this situation.
Reversed and remanded; a judgment shall issue from the Law Division compelling the issuance of a certificate of occupancy for this professional office use.
NOTES
[1] N.J.A.C. 8:43A-9.2 provides:

"Methadone detoxification" means a medically supervised procedure using methadone and/or any of its derivatives to be administered in decreasing doses, over a time period not to exceed 21 days, for the purpose of detoxification from opiates.
"Methadone maintenance" means a medically supervised procedure using methadone and/or any of its derivatives to be administered over a period of time in excess of 21 days, for the purpose of maintaining patients at a stable dosage or by slow reduction of the dosage to achieve a drug-free state.
"Methadone program" means a person or organization or branch thereof, which is approved to utlize methadone and/or any of its derivatives for the detoxification and/or maintenance treatment for the rehabilitation of narcotic addicts. Such a program conducts initial intake and evaluation of patients at a single specified location and provides counseling educational, vocational and other approved services in the ongoing treatment of patients at the same or other specified and approved locations.