ANDREW, J.T.C.
Presented for determination in this case is the question of whether property owned by a health maintenance organization (HMO), see N.J.S.A. 26:2J-1 et seq., is exempt from local property taxation because it is alleged that it is “actually and exclusively” used for “hospital purposes” pursuant to N.J.S.A. 54:4-3.6 (§ 3.6).
Defendant, Rutgers Community Health Plan, Inc. (RCHP) applied to the tax assessor of the City of New Brunswick for an exemption from taxation for its property located at 57 U.S. Highway 1, New Brunswick, identified as Block 710, Lot 13.2 on the New Brunswick tax map for the tax years of 1983 and 1984. The assessor denied each application following which RCHP appealed to the Middlesex County Board of Taxation. In each instance the county board reversed the assessor’s denial and granted the exemption. New Brunswick appealed each county board determination to this court seeking reversal of both judgments. RCHP then filed a motion for summary judgment and New Brunswick, in response, filed a cross-motion also seeking summary judgment in its favor. R. 4:46-1.
The issue here is solely one of exemption. There is no dispute as to the quantum of the assessment as originally determined by the tax assessor.
*495 RCHP relies upon the following provision in N.J.S.A. 54:4-3.6 as the basis for its exemption claim. The statutory language in effect in 1983 provided exemption from local property taxation in pertinent part for:
... all buildings actually and exclusively used in the work of associations and corporations organized exclusively for ... hospital purposes [1]
The related statutory exemption applicable to land is not in issue nor is there any dispute that RCHP is a nonprofit corporation.
Although RCHP is the defendant in this action, it is RCHP that is claiming an exempt status pursuant to § 3.6 and must therefore bear the burden of establishing “that it was organized exclusively for one of the purposes enumerated in [§ 3.6] and that the property for which the exemption is claimed is ‘actually and exclusively’ used for such purposes.” Long Branch v. Monmouth Medical Center, 138 N.J.Super. 524, 531, 351 A.2d 756 (App.Div.1976), aff’d o.b. 73 N.J. 179, 373 A.2d 651 (1977); Summit v. Overlook Hospital Ass’n., 4 N.J.Tax 183, 190 (Tax Ct.1982), aff’d o.b. per curiam 6 N.J.Tax 438 (App.Div.1984); Bloomfield v. Academy of Medicine of N.J., 47 N.J. 358, 363, 221 A.2d 15 (1966); Pingry Corp. v. Hillside Tp., 46 N.J. 457, 461, 217 A.2d 868 (1966); Jamouneau v. Tax App. Div., 2 N.J. 325, 330, 66 A.2d 534 (1949) (“the burden of proof is upon him who asserts a tax exemption to establish the asserted *496 right”). The only element of the two-part test which must be resolved in determining the eligibility of the subject property for exemption is whether RCHP was organized exclusively for “hospital purposes.” New Brunswick does not dispute that RCHP operates actually and exclusively for the purposes for which it was organized. However, New Brunswick contends that these purposes do not constitute “hospital purposes” within the meaning of § 3.6.
RCHP is a health maintenance organization within the terms of N.J.S.A. 26:2J-1 et seq. and was incorporated in April 1975 as a nonprofit corporation pursuant to N.J.S.A. 15:1-1 et seq. The draftsman of RCHP’s certificate of incorporation provided that RCHP was formed “exclusively for charitable, educational, scientific and medical purposes within the meaning of section 501(c)(3)” of the Internal Revenue Code.[2] Its stated objectives were:
(a) to provide effective and economical basic and supplemental health care services, (b) to advance the development of comprehensive health care through social and clinical research ... and (c) to promote the education of health professionals and administrators by providing to medical schools, hospitals and other medical facilities an opportunity for the study and teaching of comprehensive health care.
In furtherance of its objectives RCHP has established a number of medical service centers or health care facilities, one of which is involved in the present litigation, as part of its plan to provide health services to its subscribers and their families under agreements with RCHP. RCHP’s stated mission is to provide comprehensive high quality health care services to members in a cost-effective manner on a prepaid basis.
Nearly all of the presently enrolled members of RCHP have joined through their place of employment; however conversion to non-group membership on a direct-pay basis is available to those who terminate employment from enrolled groups, to over-age dependents, and to persons over 65 who wish to enroll *497 in the RCHP medicare plan. RCHP also provides some services to non-subscribers on a fee-for-service basis, and provides emergency care to all who need care without regard to ability to pay. RCHP facilities are equipped to provide a full range of diagnostic services including x-rays and laboratory testing in conjunction with medical examinations in all specialty areas including internal medicine, pediatrics, obstetrics/gynecology, psychiatry, orthopedics, surgery, dermatology, allergy, and optometry. All of the services provided by RCHP comprise the benefit package covered by the prepaid premium contributed by subscribers or their employers. Other than a nominal fee paid at the time of treatment, all benefits provided by RCHP are provided on a prepaid, not a fee-for-service, basis.
All RCHP members have substantially identical membership privileges and are entitled to receive essentially the same range of health and medical care services. RCHP’s health center is open from 8:30 a.m. to 9:30 p.m. every weekday, all day Saturday and Sunday afternoon. Plan members requiring additional supplemental care are referred by their primary RCHP physician to affiliated specialists and hospitals, primarily Middlesex General Hospital and St. Peter’s Medical Center in New Brunswick.
The premium for the package of services that RCHP offers is determined on a community-rating basis. Under community rating, RCHP spreads the total cost for health care services uniformly among all members of its enrolled population.
As previously stated, New Brunswick concedes that RCHP actually and exclusively operates the subject facility for its enumerated purposes outlined above and furthermore that these constitute functions normally associated with hospitals. However, New Brunswick contends that the operations of RCHP are not “hospital purposes” within the meaning of § 3.6 because RCHP is not a hospital.
As can be seen readily, the parties have narrowed the issue in this case to an appropriate construction of the phrase “for hospital purposes.” RCHP’s initial argument is that it is a *498 hospital and therefore it squarely fits the operative words in the exemption statute. Alternatively, RCHP asserts, assuming arguendo, that it is not a hospital, the phrase for “hospital purposes” was intended by the Legislature to be broader in scope than the word hospital and since the functions of RCHP, if performed by a hospital organization would accomplish hospital purposes, its functions, therefore, are for hospital purposes. New Brunswick responds, first, by asserting that RCHP is not a hospital as that term is commonly understood and, secondly, the phrase for “hospital purposes” simply means “for purposes of a hospital” and since RCHP is not a hospital it cannot meet the exemption requisites.
The general rule relative to the interpretation of exemptions in local property tax statutes is that such exceptions are to be strictly construed because an exemption from taxation is a departure from the equitable principle that everyone should bear his just and equal share of the public burden of taxation. Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961). Taxation is the rule and exemption is the exception to the rule. A legislative design to release one from his just proportion of the public burden should be expressed in clear and unequivocal terms. Board of National Missions v. Neeld, 9 N.J. 349, 353, 88 A.2d 500 (1952). The burden is upon the claimant to clearly bring himself within an exemption provision. Ibid. Tax exemptions are not favored and doubts are to be resolved against one claiming the exemption. Bloomfield v. Academy of Medicine of N.J., supra. Doubt dictates denial.
It must be noted, however, that strict construction does not require a rigid interpretation that does not serve the apparent legislative purpose, rather a statute is to receive a reasonable construction. Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956). This qualification of reasonableness, however, does not negate a constructional preference for the taxation of property. Container Ring v. Taxation Div. Director, 1 N.J.Tax 203, 298 (Tax Ct.1980), aff'd o.b. 4 *499 N.J.Tax 527 (App.Div.1981), certif. den. 87 N.J. 416, 434 A.2d 1090 (1981).
The answer to the question presented by the parties is not explicitly set forth in the exemption provision since § 3.6 does not define the term hospital nor has this court been able to discover any decisional law in this State which dictates the appropriate conclusion.[3] This court has therefore examined the primary meaning of the words used by the Legislature, the history and purpose of § 3.6 and the practical sense of the statute in order to resolve the present dispute, keeping in mind the constructional guidelines set forth above.
I
In support of RCHP’s initial position that it is a hospital it asserts that its primary purpose is the “delivery of health care services” and cites Scerbo v. Orange Adjustment Bd., 121 N.J.Super. 378, 297 A.2d 207 (Law Div.1972) as authority for the claim that it is a hospital. In Scerbo the Law Division held, in a zoning context, that a residential narcotic rehabilitation and treatment center under the supervision of the Commissioner of Health was a “hospital” and therefore qualified as an institutional use under the terms of the Orange zoning ordinance. In concluding that the residential treatment center was a hospital the court adopted the definition of “hospital” set forth in Black’s Law Dictionary as “An institution for the reception and care of sick, wounded, inform or aged persons.” Black’s Law Dictionary (4 ed. 1951) at 871.
*500 Although this definition appears superficially to support RCHP’s position, I find that implicit within the cited definition of the word “hospital” is the requirement for continuous ongoing care. This can be seen in another definition of the word “hospital” set forth in Webster’s New Universal Unabridged Dictionary which defines hospital as “an institution where the ill or injured may receive medical, surgical or psychiatric treatment, nursing, food and lodging, etc. during illness.” Webster’s New Universal Unabridged Dictionary (2 ed. 1983) at 879; emphasis supplied.
This conclusion finds further support in the cases of Parker v. Rash, 314 Ky. 609, 236 S.W.2d 687 (App.Ct.1951) and New York Life Ins. Co. v. Ince, 27 S.W.2d 476 (Missouri App.Ct.1930) involving the concept of a hospital in varying contexts. In Parker defendant contended that its proposed doctors’ office building which included space and facilities for four doctors, treatment rooms, nurses workroom, recovery room and an x-ray room was a hospital. The court rejected defendant’s argument in the following manner.
[Defendant’s] first contention cannot be sustained. What he proposes to erect is not a hospital. The term identifies an institution which, as a general rule, has facilities for furnishing patients more than temporary medical or surgical treatment. It is commonly understood to be a place where persons obtain complete care, including food and shelter____ A doctor’s office certainly has something in common with a hospital, but the two are not the same in the ordinary meaning of the terms. [236 S.W.2d at 688]
In New York Life Ins. Co. the court indicated that the Mayo Clinic in Rochester, Minnesota was not a hospital this way:
Technically speaking, a clinic is not a hospital, asylum or sanitarium in the sense that it does not provide beds for its patients. [27 S.W.2d at 480]
Additionally, in Scerbo the trial judge also cited 41 C.J.S., Hospitals, § 1 at 331 to further support his conclusion. Within § 1 at 332 the text in distinguishing a hotel from a hospital provides that “A hospital, however, has been said to be a specialized hotel where the sick or infirm in body or mind may be treated by physicians.” Emphasis supplied. Scerbo itself involved a facility that provided ongoing continuous care and *501 bed checks. Scerbo, supra, 121 N.J.Super. at 382, 297 A.2d 207.
The conclusion that continuous bed care is implicit in any definition of a hospital is further supported by the language found in 8 Encyclopedia Britannica (1981 ed.) wherein hospital is defined:
As an institution that is built, staffed and equipped for the identification—diagnosis—of disease and the treatment, both medical and surgical, of the sick and the injured; for their housing during this process; and for certain other procedures____ (at 1114; emphasis supplied]
Along with the essential medical services generally supplied by a hospital such as emergency room, coronary care, intensive care, x-ray facility, laboratory, operating rooms, recovery rooms, see Summit, supra, 4 N.J.Tax at 186, a hospital also provides the essential services of a hotel. See 8 Encyclopedia Britannica, supra, at 1114.
In addition to the above references to authorities recognized for their definitions, in order to glean legislative intent or purpose this court has also examined the available statutory descriptions of the word hospital. As previously indicated, § 3.6 provides no assistance in this regard. While nowhere in the New Jersey statutes is there a definition of the word hospital which purports to establish the minimum requisites for all purposes, Titles 26 and 30 of the statutes provide varying descriptions of the term in different contexts.
N.J.S.A. 26:21-3 within the Health Care Facilities Financing Authority Act includes within the meaning of “private hospitals” hospitals or related institutions including a health maintenance organization. However, the New Jersey Supreme Court has recognized that “the nature, purpose and objects of the Health Care Facilities Financing Authority Act are so different from those of the general tax exemption statutes in relation to hospitals” that the two cannot be considered in pari materia and the Health Care Facilities Financing Authority Act “affords no light on the proper construction” of the tax exemption provision. Monmouth Medical Center v. Long Branch, 73 N.J. 179, 180, 373 A.2d 651 (1977).
*502 The parties have submitted two additional descriptions of hospital facilities both within Title 30. RCHP cites N.J.S.A. 30:1-1 et seq. which regulates this State’s institutions and agencies. RCHP points, specifically, to N.J.S.A. 30:1-19 (§ 19) which encompasses a description of hospitals which explicitly includes “public health centers and related facilities.” By its nature this statute does not support defendant’s cause. Under the terms of § 19 use of the word hospital to include public health centers and related facilities is appropriate only in the administration of that very act, i.e., N.J.S.A. 30:1-19 through -22. These provisions govern only entitlement to and disbursement of federal aid to health care facilities. Similar to the issue raised in Monmouth Medical Center, supra, the nature, purpose, and objects of the provisions of N.J.S.A. 30:1-1 et seq. to which the above definition is applicable, namely, the entitlement of a health care facility to federal funding, are in no way related to the legislative purpose underlying the tax exemption provision at issue. As such, the definition of hospital facilities within § 19 is not illustrative of the scope of the term hospital in § 3.6.
New Brunswick also looks to Title 30 and specifically points to N.J.S.A. 30:11-8 (§ 8) within that portion of Title 30 explicitly devoted to nursing homes and hospitals. The definition of hospital in § 8 applicable to all aspects of the licensing, administration and regulation of nursing homes and hospitals, specifically excludes “first-aid stations for emergency medical or surgical treatment where no continuous bed care or protracted treatment is contemplated or performed.” The characterization of hospitals as those facilities which provide continuous long term care for periods exceeding 24 hours has been carried over into the New Jersey Administrative Code provisions governing standards for hospital facilities adopted pursuant to N.J.S.A. 30:11-1 et seq. N.J.A.C. 8:43B-1.2 provides the only definition of the term hospital applicable to the statutory provisions of N.J.S.A. 30:11-1 et seq. and the administrative code regulations adopted pursuant thereto. The definition reads:
*503 A private hospital is an institution, whether operated for profit or not, which is not maintained, supervised or controlled by an agency of the government of the State of any county or municipality and which maintains and operates facilities for the diagnosis, treatment or care of two or more non-related individuals suffering from illness, injury or deformity and where emergency, outpatient, surgical, obstetrical, convalescent or other medical and nursing care is rendered for periods exceeding hours. [Emphasis supplied] [4]
RCHP has suggested that the absence of 24-hour continuous care from the operations of RCHP would be an arbitrary distinction upon which to rest a denial of tax exemption. This suggestion is wide of the mark. It is not the 24-hour continuous care as an abstract factor that is significant. Rather it is all that is implicated in the requirement of 24-hour continuous care which includes, among many other things, maternity and nursery facilities, major surgery, cardiac care facilities, intensive care facilities, and 24-hour emergency service.
Moreover, if this court were to reject 24-hour continuous care as a minimum requisite to classification as a hospital it would *504 invite a whole host of health care facilities, independent of hospitals, which do not provide ongoing continuous care to actively seek and obtain tax exempt status. Some facilities which come to mind readily would be nonprofit clinics, dispensaries, radiology facilities, medical supply facilities, laboratory services, speech therapy facilities, pharmacies, dietary service facilities, dental care facilities and neighborhood medical care centers.
 In my view a failure to accept 24-hour continuous care as a distinguishing feature of a hospital would effectively and vastly expand the category of facilities presently eligible for tax exempt status under § 3.6. This runs contrary to the previously enunciated principle of statutory construction that statutes granting exemption from taxation must be strictly construed against those seeking exemption. Princeton Univ. Press v. Princeton, supra, 35 N.J. at 214, 172 A.2d 420. Strict construction of tax exemption statutes requires a literal interpretation of the wording of the statute, flexible only to the extent necessary to reach a reasonable result under the circumstances. Long Branch v. Monmouth Medical Center, supra, 138 N.J.Super. at 531, 351 A.2d 756. In light of the foregoing RCHP cannot be viewed as a hospital within the meaning of § 3.6.
II
RCHP contends in the alternative that the § 3.6 exemption is available for facilities which are not hospitals but which are designed to accomplish similar purposes. Defendant thereby seeks an exemption for a facility operating for hospital purposes within the meaning of § 3.6 because it performs functions which include and overlap with functions performed by hospitals.
The issue presented is to what extent a building which is not itself a hospital, nor integrated with a hospital, may nonetheless qualify for an exemption pursuant to § 3.6. Traditionally, the test applied to nonhospital buildings has focused on the *505 primary purpose of the facility. City of Long Branch, supra, 138 N.J.Super. at 533, 351 A.2d 756. The scope of the § 3.6 exemption has been extended to facilities which are an integral part of, and whose primary function is reasonably necessary for, the proper and efficient operation of a hospital. Id. at 522, 351 A.2d 756; Summit, supra, 4 N.J.Tax at 191; Perth Amboy Gen’l Hospital v. Perth Amboy, 176 N.J.Super. 307, 422 A.2d 1331 (App.Div.1980). The focus in cases applying the hospital purposes exemption to nonhospital facilities is on the extent of the integration of the tax exempt hospital with the facility for which exemption is sought or on the association between the two.
Defendant in this case claims that it falls within the “hospital purposes” exemption not because it provides services reasonably necessary to the function of the hospitals with which it is associated, but because its functions and the purposes for which it operates closely parallel the purposes for which a hospital operates, i.e., the delivery of health care services. By placing emphasis on the nature of its functions, defendant has suggested that its independence from a hospital facility does not preclude exemption under § 3.6. However, a reasonable reading of the statute in light of apparent legislative purpose and the above cases demonstrates that the appropriate emphasis in determining the scope of the “hospital purposes” exemption is not on the function a facility performs, but rather the purpose for which the functions are performed.
It is evident by the legislative choice of words that the Legislature recognized that hospitals serve a public purpose and are clothed with an overriding public interest. Obviously the primary purpose in providing tax exemption for facilities used for hospital purposes was to promote and serve the public welfare by assuring that this State would have adequate hospital facilities to meet both existing and anticipated demands. This purpose does not extend to all health care facilities, absent clear legislative language to that effect.
The facility for which exemption is sought must exist for hospital purposes. Its purposes are “hospital purposes” if *506 its services are performed for the purpose of advancing the aims and goals of a functioning hospital. The term “hospital” in § 3.6, which is the operative word, is an adjective that modifies and qualifies the purpose which the facility seeking exemption must serve to obtain exempt status. Section 3.6 does not exempt any facility which provides hospital-type services; rather it exempts facilities whose services are provided to advance the functioning of a hospital, whether or not the services are medical care or health care in nature.
There are many purposes that may constitute hospital purposes when performed in conjunction with the functioning of a hospital. These will lose their qualifying status when disassociated with a hospital and performed independently and not for the purpose of accomplishing the objectives of a hospital. For example, hospitals require laundry services, accounting services, parking facilities, and residential housing facilities for personnel. The facilities serving these purposes all exist for hospital purposes to the extent that they are an integral part of, and are reasonably necessary for the proper and efficient operation of the hospital facility. Long Branch, supra, 138 N.J.Super. at 535, 351 A.2d 756; Summit, supra, 4 N.J.Tax at 193. Similarly, even where the function of the facility involved is to provide hospital-type medical or health care services, the facility cannot exist for hospital purposes unless its services are reasonably necessary to and thereby fulfill the purposes of a hospital.
The sheer fact that a hospital provides a particular service does not make any facility which provides that same service exist for hospital purposes unless that facility provides the service for the benefit of a hospital.
RCHP provides various types of medical and/or health care similar to those which a hospital would normally provide. However, RCHP does not provide this care for the purposes of furthering the goals of a hospital. While defendant has stated that it makes referrals to local hospitals for care which it is not equipped to provide, these hospitals supplement the care avail *507 able at its HMO facilities, as opposed to RCHP’s facilities operating to further the purposes of the hospitals with which it associates. The relationship between RCHP and the hospitals with which it is affiliated does not rise to the level of integration necessary to cause this court to conclude that RCHP advances the goals of these hospitals. As such and contrary to defendant’s suggestion, the independence of RCHP from any hospital facility is fatal to its claim for an exemption under § 3.6.[5]
Ill
Two additional points require mention. RCHP points to the provision in § 3.6 which permits exemption of “all buildings owned and used by volunteer first-aid squads” and contends that this along with the “hospital purposes” exemption evinces a legislative purpose to exempt all health care facilities. The short answer to this contention is that the Legislature provided specific exemptions. If the purpose were to exempt all health care facilities the Legislature could have expressly so provided. As Title 26 clearly shows the Legislature is fully aware of the differences in health care facilities.
RCHP also asserts that a provision in N.J.S.A. 26:2J-25, a portion of the Health Maintenance Organization Act, N.J.S.A. 26:2J-1 et seq., which precludes taxation of any *508 charges paid with respect to the health care services provided by an HMO, indicates a legislative design to exempt the property of an HMO from local property taxation.
Again, the short answer is that if exemption of HMO property from local property taxation were the Legislature’s intent it could have expressed its intention to exempt HMO property from local property tax in direct and specific language. It did not. I cannot. Judicial construction does not permit a court to legislate.
The issue of whether health care facilities such as RCHP should be provided with an exemption for its real property from local taxation is a legislative question and the Legislature, with its ability to explore all aspects of the exemption question with regard to health care facilities, is the appropriate body to make such a determination.
Although providing low cost health care on a nonprofit basis is commendable and certainly worth encouraging, for all of the reasons previously expressed I am unable to conclude that RCHP satisfies the requisites of the narrow “hospital purposes” exemption provision in § 3.6.
The Clerk of the Tax Court is directed to enter judgment reversing the determinations of the Middlesex County Board of Taxation for 1983 and 1984 and reinstating the original assessments.

 The exemption provision for hospital purposes was amended in 1983 to provide for exemption as follows:
All buildings actually used in the work of associations and corporations organized exclusively for hospital purposes, provided that if any portion of a building used for hospital purposes is leased to profit-making organizations or otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion shall be exempt.... [L.1983, c. 224, § 1, effective June 27, 19831
This change, which reflects the legislative response to the Appellate Division's decision in Long Branch v. Monmouth Medical Center, 138 N.J.Super. 524, 351 A.2d 756 (App.Div.1976), aff’d o.b. 73 N.J. 179, 373 A.2d 651 (1977), does not require a different result for each tax year since the real issue, here, is the construction of the phrase for "hospital purposes” which remains the same in the original statute and the amended version.

 In September 1982 RCHP obtained a determination letter from the Internal Revenue Service declaring that it was exempt from federal income tax as an organization described in section 501(c)(3) of the Internal Revenue Code.

 Cases dealing with the exemption for hospital purposes under § 3.6 have not defined the term hospital. Each case involved a factual determination of whether the facilities involved were actually and exclusively used for the exempt purpose. See, e.g. Perth Amboy General Hospital v. Perth Amboy, 176 N.J.Super. 307, 422 A.2d 1331 (App.Div.1976); Princeton v. Tenacre Foundation, 69 N.J.Super., 559, 174 A.2d 601 (App.Div.1961); Long Branch v. Monmouth Medical Center, 138 N.J.Super. 524, 351 A.2d 756 (App.Div.1976), aff'd o.b. 73 N.J. 179, 373 A.2d 651 (1977); Summit v. Overlook Hospital Ass’n, 4 N.J.Tax 183 (Tax Ct.1982), aff’d o.b. per curiam 6 N.J.Tax 438 (App.Div.1984); Overlook Hasp. Ass’n v. Summit, 6 NJ.Tax 90 (Tax Ct.1983), aff'd o.b. per curiam 6 NJ.Tax 350 (App.Div.1984).

 it is well settled that such duly promulgated administrative rules and regulations have the force and effect of law. Hackensack v. Rubinstein, 37 N.J. 39, 45, 178 A.2d 625 (1962); State v. Atlantic City Electric Company, 23 N.J. 259, 270, 128 A.2d 861 (1957). Validly executed pronouncements of administrative agencies charged with implementing statutory mandates are entitled to great weight in determining the legislative intent in and meaning of the statute pursuant to which they were enacted. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 69-70, 389 A.2d 465 (1978); Matawan Bor. v. Monmouth Cty. Tax Bd., 51 N.J. 291, 300, 240 A.2d 8 (1968); Delaware Tp. v. Neeld, 52 N.J.Super. 63, 70, 144 A.2d 801 (App.Div.1958). Failure of the Legislature to respond in any way to the qualifications of statutory language by the administrative agency charged with implementing the statute has been viewed as a tacit acceptance by the Legislature of the agency’s interpretation of the statutory language. Jersey City Incinerator Auth. v. Dept. of Public Utilities, 146 N.J.Super. 243, 253, 369 A.2d 923 (App.Div.1976). In the present case the definitions of NJ.A.C. 8.-43B-1.2 were promulgated by the Department of Institutions and Agencies pursuant to the authority of N.J.S.A. 30:11-1 et seq. These provisions were implemented in 1969 and were therefore in effect at the time of the Legislature’s most recent amendments to § 3.6. The conclusion which can be drawn is that the Legislature was aware of the operative definitions embodied in NJ.A.C. 8:43B-1.2 limiting hospitals to those facilities equipped to provide 24-hour continuous care; having taken no steps to expand that definition or to specifically enumerate other health care facilities in § 3.6 as were included in the above-mentioned N.J.S.A. 26:21-3 and 30:1-19, it can be assumed that the Legislature acquiesced in this definition.

 Defendant has argued that if the Legislature had intended to limit exemptions to hospitals then it would have used the term hospital or hospitals rather than the obviously broader term "hospital purposes.” This court has not concluded that the exemption is limited to hospitals in recognition of the fact that nonprofit corporations or associations other than hospitals might be organized and operated exclusively for hospital purposes.
For example, two or more hospitals in a particular area could determine that for reasons of economy of scale that one location would better suit most of their administrative functions. Thus, they could organize a nonprofit corporation to purchase or construct a suitable facility to house these activities. The corporation need not be a hospital yet it conceivably could be organized to accomplish solely hospital purposes. Instead of administrative functions a joint venture clinic could also be created for similar reasons of economy. Of course these organizations must meet all of the necessary requisites under § 3.6 in order to qualify for exemption.