19 A.3d 1038 (2011)
420 N.J. Super. 193
SHAKOOR SUPERMARKETS, INC., Plaintiff-Appellant,
v.
OLD BRIDGE TOWNSHIP PLANNING BOARD, and The Golf Center, Inc., Defendants-Respondents.
Foxborough Village Homeowners Association, Inc., Plaintiff,
v.
Township of Old Bridge, Township of Old Bridge Planning Board, and The Golf Center, Inc., Defendants.
DOCKET NO. A-3765-09T3
Superior Court of New Jersey, Appellate Division.
Argued January 4, 2011.
Decided June 13, 2011.
*1040 Ronald S. Gasiorowski, Red Bank, argued the cause for appellant (Gasiorowski & Holobinko, attorneys; Mr. Gasiorowski, on the brief).
William J. Wolf, Lakewood, argued the cause for respondent The Golf Center, Inc. (Bathgate, Wegener & Wolf, P.C., attorneys; Mr. Wolf, on the brief).
DiFrancesco, Bateman, Coley, Yospin, Kunzman, Davis & Lehrer, P.C., Warren, attorneys for respondent Township of Old Bridge Planning Board, join in the brief of respondent The Golf Center, Inc.
Before Judges YANNOTTI, ESPINOSA and SKILLMAN.
The opinion of the court was delivered by
ESPINOSA, J.A.D.
This case presents the question whether public notice of an application for site plan approval that included the construction of "a main retail store of 150,000 [square feet]" was legally insufficient because the application failed to identify the store as a Walmart. For the reasons that follow, we conclude the notice was sufficient.
Defendant, The Golf Center, Inc., owns 53.26 acres in Old Bridge Township with frontage on Route 18 and Marlboro Road (the property) that is located in a redevelopment district and in a C-R-Commercial Retail Zone. The Golf Center applied for and received preliminary and final site plan approval from defendant, Old Bridge Township Board (the Board), for a plan that included the construction of a 150,000 square foot "main retail store." Shakoor Supermarkets, Inc. (Shakoor), a local supermarket, challenged the approvals, variances, and waivers granted, and appeals from an order dismissing its complaint. For the reasons that follow, we affirm.
The property was previously the subject of litigation among The Golf Center, the Township of Old Bridge, the Board, and the Economic Development Corporation, which resulted in a consent order for dismissal (the Agreement), dated August 4, 2006. The Agreement required the Township to amend the Old Bridge Township Crossroads Redevelopment Plan, adopted May 2004 (the Redevelopment Plan), so as to be consistent with the development regulations for the CR-Commercial Retail Zone and enable The Golf Center to develop its property in conformance with the amended Redevelopment Plan, subject to the explicit limitation that "no single user commercial building may exceed 150,000 sq. ft." The Redevelopment Plan was amended in 2006 to allow the property to be developed according to the permitted uses, which include commercial development *1041 and shopping centers containing retail uses. The Redevelopment Plan includes the same size limitation as the Agreement, namely that "[n]o single user commercial building may exceed 150,000 sq. ft."
In 2008, The Golf Center applied to the Board for preliminary and final site plan approval, together with variances and waivers. The application proposed development of a 150,000 square foot retail building with an attached outdoor garden center of 7,200 square feet, a single retail building of 18,400 square feet, two separate restaurants totaling approximately 14,200 square feet, and a two-story office building of 29,190 square feet, with related improvements.
Pursuant to N.J.S.A. 40:55D-12, The Golf Center published newspaper notice of each of the public hearings scheduled for June 10, 2008, August 5, 2008, October 28, 2008, and March 3, 2009, and also notified all property owners within 200 feet of the property of the public hearings. Each notice included the following:
The subject of the hearing will be the application of The Golf Center, Inc. for preliminary and final site plan approval for all buildings, structures, parking areas and other site improvements related to:
(a) Construction of a main retail store of 150,000 s.f.
. . . .
Public hearings were held on August 5, 2008, October 28, 2008, January 6, 2009, and March 3, 2009. There were numerous references to the fact that Walmart was the proposed tenant of the 150,000 square foot store. Among the witnesses was a representative of Walmart, Edward Millington, who testified the Walmart would be a super store, open twenty-four hours, and would include groceries, produce and a meat department. Public comments also included references and concerns regarding the inclusion of Walmart in the proposed plan. Indeed, Charlie Shakoor, owner of the plaintiff store, commented on the economic impact the Walmart would have upon his supermarket.
The Golf Center's application was approved by the Board on June 9, 2009, subject to various stipulations and conditions. The Board adopted a memorializing resolution that day, which required The Golf Center to develop the site in accordance with a phasing plan that identified Phase I as "Construction of 150,000 s.f. Walmart and 7,200 +/- s.f. garden center."
On July 17, 2009, Shakoor filed a complaint in lieu of prerogative writs, challenging the Board's approval and naming The Golf Center and the Board as defendants. The court affirmed the Board's approval of The Golf Center's application and dismissed plaintiffs' complaints.[1] Specifically, the court found (1) public notice of the hearing was sufficient; (2) the Board's traffic analysis was diligent; and (3) no variance was needed where The Golf Center's proposal included a 150,000 square foot single use commercial building, which did not violate either the Redevelopment Plan or Settlement Agreement.
In its appeal, Shakoor presents the following issues for our consideration:
POINT I
THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY RULING THAT THE APPLICANT'S NOTICE *1042 WAS LEGALLY SUFFIC[I]ENT WHERE THE NOTICE DID NOT IDENTIFY THE USES PROPOSED FOR THE BUILDINGS
POINT II
THE PLANNING BOARD HAD NO AUTHORITY TO GRANT APPROVAL FOR A SINGLE USER COMME[R]CIAL BUILDING GREATER THAN 150,000 SQUARE FEET WHICH WAS CONTRARY TO THE STANDARDS OF THE REDEVELOPMENT PLAN AND THE SETTLEMENT AGREEMENT ENTERED INTO BY THE APPLICANT, TOWNSHIP AND BOARD STRUCTURE AND THE PROPOS[AL] REQUIRED EITHER A USE VARIANCE FROM THE ZONING BOARD OF ADJUSTMENT OR AN AMENDMENT TO THE REDEVELOPMENT PLAN BY THE GOVERNING BODY
A. AS A RESULT OF THE APPLICANT'S DEVIATION FROM THE REDEVELOPMENT PLAN STANDARDS, THE PLANNING BOARD DID NOT HAVE JURISDICTION TO HEAR THE APPLICATION WHERE EITHER A "D" VARIANCE WAS REQUIRED FROM THE ZONING BOARD OF ADJUSTMENT OR THE TOWNSHIP COUNCIL WAS REQUIRED TO AMEND THE REDEVELOPMENT PLAN
POINT III
THE TRIAL COURT ERRED IN FAILING TO ADDRESS SHAKOOR'S ARGUMENT THE BOARD'S GRANTING OF SITE PLAN APPROVAL WITHOUT A HEARING OPEN TO THE PUBLIC AND WITHOUT SUFFICIENT INFORMATION WAS AN IMPROPER DELEGATION OF AUTHORITY, ARBITRARY, CAPRICIOUS, AND UNREASONABLE AND DEPRIVED THE PUBLIC OF DUE PROCESS AND THE RECORD REFLECTS AS A MATTER OF LAW THAT THE BOARD'S ACTION WAS ERRONEOUS
A. THE PLANNING BOARD UNLAWFULLY DELEGATED ITS AUTHORITY IN GRANTING PRELIMINARY AND FINAL SITE PLAN APPROVAL ESPECIALLY WHERE SO MANY SIGNIFICANT AND FUNDAMENTAL ASPECTS WERE LEFT UNANSWERED
After carefully reviewing the record, briefs and arguments of counsel, we are satisfied that none of these arguments has merit.
A local land use board's decision "is presumptively valid, and is reversible only if arbitrary, capricious, and unreasonable." Smart SMR v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327, 704 A.2d 1271 (1998). A reviewing court must determine whether the decision is "`supported by the record and is not so arbitrary, capricious, or unreasonable as to amount to an abuse of discretion.'" New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adjustment, 160 N.J. 1, 14, 733 A.2d 442 (1999) (quoting Smart SMR, supra, 152 N.J. at 327, 704 A.2d 1271). A court's duty, therefore, is to determine if the board followed the statutory guidelines and, if so, to ascertain whether it properly exercised its discretion. See Burbridge v. Mine Hill Twp., 117 N.J. 376, 385, 568 A.2d 527 (1990).
When, as here, a planning board reviews a site plan application, it has limited discretion and typically must grant the application if the proposal complies with local ordinances and the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163. Sartoga v. Borough of West Paterson, 346 N.J.Super. 569, 581, 788 A.2d 841 (App.Div.), certif. denied, 172 N.J. 357, 798 *1043 A.2d 1270 (2002); Shim v. Washington Twp. Planning Bd., 298 N.J.Super. 395, 411, 689 A.2d 804 (App.Div.1997). Such review "was never intended to include the legislative or quasi-judicial power to prohibit a permitted use." PRB Enters., Inc. v. S. Brunswick Planning Bd., 105 N.J. 1, 7, 518 A.2d 1099 (1987); Sartoga, supra, 346 N.J.Super. at 582, 788 A.2d 841. Unless there is a clear abuse of discretion, a reviewing court must not substitute its own judgment for that of the board, even if it questions the wisdom of the action. See Cell South of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81, 796 A.2d 247 (2002); Bressman v. Gash, 131 N.J. 517, 529, 621 A.2d 476 (1993); D. Lobi Enters., Inc. v. Planning/Zoning Bd. of Borough of Sea Bright, 408 N.J.Super. 345, 360, 974 A.2d 1134 (App.Div.2009). We are satisfied there was no abuse of discretion here.

I
We turn first to Shakoor's challenge to the sufficiency of the public notice.
Failure to provide proper notice deprives a municipal planning board of jurisdiction and renders null any subsequent action. Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 79, 711 A.2d 282 (1998); Perlmart of Lacey, Inc. v. Lacey Twp. Planning Bd., 295 N.J.Super. 234, 237, 684 A.2d 1005 (App.Div.1996). Proper notice requires, among other things, that public notices of applications before a zoning board state "the nature of the matters to be considered." N.J.S.A. 40:55D-11.
In Perlmart, we described the purpose for this requirement:
It is ... plain that the purpose for notifying the public of the "nature of the matters to be considered" is to ensure that members of the general public who may be affected by the nature and character of the proposed development are fairly apprised thereof so that they may make an informed determination as to whether they should participate in the hearing or, at the least, look more closely at the plans and other documents on file.
[Perlmart, supra, 295 N.J.Super. at 237-38, 684 A.2d 1005 (quoting N.J.S.A. 40:55D-11).]
We described the primary challenge to the notice provided in Perlmart as follows: "[W]hile the notice informed the public that certain variances and minor and major site plan approvals were being sought `for the creation of commercial lots' in a commercial zone, it does not tell the public of the nature of that use, i.e. a conditional use K-Mart shopping center." Id. at 237, 684 A.2d 1005. Shakoor relies upon our conclusion that such notice was insufficient to support its argument that public notice here required notice that Walmart was to be the 150,000 square foot retail store. This reliance is misplaced. Although we concluded that the notice's failure to identify the proposed use as a conditional use shopping center rendered it legally deficient, id. at 241, 684 A.2d 1005, we did not hold that it was necessary to identify K-Mart as the retailer.
Instead, we stated the notice should provide a "common sense description of the nature of the application, such that the ordinary layperson could understand its potential impact upon him or her." Id. at 239, 684 A.2d 1005; see also Twp. of Stafford, supra, 154 N.J. at 74-75, 711 A.2d 282. The notice need not be "exhaustive" to satisfy this standard. Perlmart, supra, 295 N.J.Super. at 239, 684 A.2d 1005. Indeed, we rejected contentions that the MLUL required notice that a conditional use approval was sought and that specified all of the particular variances required, Id. *1044 at 237, n. 3, 240, 684 A.2d 1005; see also Scerbo v. Bd. of Adjustment, 121 N.J.Super. 378, 388-89, 297 A.2d 207 (Law Div. 1972). To adequately inform, the notice must give "an accurate description of what the property will be used for under the application" rather than rely upon references to technical zoning terms for that use. Perlmart, supra, 295 N.J.Super. at 238-39, 684 A.2d 1005; see also Pond Run Watershed Ass'n. v. Twp. of Hamilton Zoning Bd. of Adjustment, 397 N.J.Super. 335, 355, 937 A.2d 334 (App.Div.2008).
In re Hartz/Damascus Bakery, Inc., 404 N.J.Super. 49, 62, 960 A.2d 747 (App.Div. 2008) applied this "common sense" standard to conclude that notice of "a continuous production bakery" was sufficient to permit an ordinary layman to make an informed decision whether to participate. Similarly, in Scerbo, supra, 121 N.J.Super. at 381, 388, 297 A.2d 207, the description of the proposed use as a "residential treatment center for drug dependent persons" was sufficient even though it did not state that a special exception or variance was sought. In each of these cases, the proposed use was described in terms that would permit an ordinary layperson to understand how the property would be used and to be sufficiently alerted to the potential impact of that use upon him or her. In contrast, the notice in Perlmart describing the proposed use as the "creation of 3 commercial lots with a total of 42.53 acres" provided no common sense description of the actual use of those lots. And, in Pond Run, a notice that the project included "retail/office units" was deficient because it failed to disclose that the variances sought included approval for a large restaurant with a potential liquor license, 397 N.J.Super. at 339-40, 937 A.2d 334, a use likely to cause "heightened concern to neighbors and other members of the public." Id. at 354, 937 A.2d 334.
The notice here identified the proposed use as "a main retail store of 150,000 s.f." Shakoor argues this notice was insufficient because it failed to disclose that the 150,000 square foot retail store was "a Wal-Mart Supercenter/Shopping Center which would itself contain multiple retail uses." We are satisfied that notice of a proposed "main retail store of 150,000 s.f." adequately informed laypersons that a major "big box" store was proposed for the site and alerted them to the possible concerns, such as traffic, commonly associated with those stores, and, indeed, such concerns were expressed by members of the public at the hearings. Although the proposed store included multiple retail uses, all were permitted uses under the Redevelopment Plan. Moreover, unlike the large restaurant serving alcohol in Pond Run, none of the uses provide legitimate cause for "heightened concern" to the public, beyond those associated with a 150,000 square foot retail store. Accordingly, we conclude that the notice provided here satisfied the requirements of the MLUL.

II
The resolution adopted by the Board approved the construction of a 150,000 square foot Walmart and a garden center of approximately 7,200 square feet. Shakoor argues the garden center must be considered part of the Walmart building, resulting in a building that exceeds the 150,000 square foot limit imposed by the Redevelopment Plan. Shakoor contends the Board therefore lacked authority to approve the plan in the absence of a variance or the amendment of the Redevelopment Plan. We disagree.
A "building" is defined in the MLUL and in the Old Bridge zoning ordinances as "a combination of materials to form a construction adapted to permanent, temporary or continuous occupancy and having a *1045 roof." N.J.S.A. 40:55D-3; Old Bridge Ord. § 250-6 (2007). Commonly, a building is defined as "a constructed edifice designed to stand more or less permanently, covering a space of land, usually covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure." Webster's Third New International Dictionary (1981).
The outdoor garden center at issue will consist of fencing on three sides, a wall on the fourth side and will not have a roof. Although the garden center is accessible through the main structure, it is neither housed under the structure's roof nor located within the building's four walls. Since the proposed garden center is not "adapted to permanent, temporary or continuous occupancy" and does not have a roof, it is not a building and its square footage need not be included within that of the Walmart building. Consequently, no variance or amendment to the Redevelopment Plan was required.

III
After all public comments had been received at the fourth public hearing on March 3, 2009, the chairman of the Board closed the public portion of the hearing and noted that the testimony had concluded. The chairman instructed the applicant to submit plans revised to include the changes discussed at the public portion of the meeting that night and scheduled the next meeting for "just Board comment and a vote."
The Golf Center returned to the Board on May 5, 2009, with revised plans that reflected all of the changes agreed upon at the prior public meeting. The Board's professional consultants confirmed that the revised plans were "consistent" with the testimony provided by The Golf Center at the prior public hearing regarding proposed revisions to the plan, and the Board voted to approve the plan.
Shakoor argues the Board effectively allowed The Golf Center to submit a plan that was voted upon outside a public hearing and without cross-examination, in violation of N.J.S.A. 40:55D-10(d), resulting in a procedure that was arbitrary and capricious. N.J.S.A. 40:55D-10(d) provides:
The testimony of all witnesses relating to an application for development shall be taken under oath or affirmation by the presiding officer, and the right of cross-examination shall be permitted to all interested parties through their attorneys, if represented, or directly, if not represented, subject to the discretion of the presiding officer and to reasonable limitations as to time and number of witnesses.
[Emphasis added.]
The right of interested parties to cross-examine witnesses is therefore subject to the Board's "discretion to limit testimony and cross-examination in a reasonable manner." Lincoln Heights Ass'n v. Twp. of Cranford Planning Bd., 314 N.J.Super. 366, 384, 714 A.2d 995 (Law Div.1998), aff'd, 321 N.J.Super. 355, 729 A.2d 50 (App.Div.), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999).
Shakoor did in fact have the opportunity to cross-examine all witnesses regarding the application. No new witnesses were presented after the public portion of the hearing was closed. Shakoor conceded at oral argument that it cannot identify any aspect of the final plan to which it would have objected and as to which it was denied the opportunity to present its objection at a public hearing. As a result, the Board's decision to end cross-examination cannot be considered *1046 unreasonable and any error in closing the public portion of the hearing and failing to vote on the matter in a public session was harmless.
It is also argued that the Board improperly delegated its authority to its professional consultants. The MLUL contemplates that a land use board will retain professional consultants to assist in reviewing and evaluating development applications. See N.J.S.A. 40:55D-24; N.J.S.A. 40:55D-53.2. On May 5, 2009, the Board's consultants confirmed that the revised plans submitted were consistent with the plans testified to at the prior public hearings and that the application had not changed "in any significant way." The transcript reveals that the May 5, 2009, meeting consisted of the Board verifying with its consultants that The Golf Center had incorporated into the revised plans the changes suggested or mandated by the Board, the Board's professional consultants, and members of the public at the prior hearings. Such assistance in the evaluation of the revised plan was well within the scope of service anticipated by the applicable statutes. It was the Board, and not any consultant, that exercised the authority to approve the application. This argument therefore lacks merit.
Affirmed.
NOTES
[1] Plaintiff, Foxborough Village Homeowners Association (Foxborough), a not for profit corporation representing the nearby residential community of Foxborough Village, also filed a complaint in lieu of prerogative writs with the Law Division, which was consolidated with this action, but did not appeal.