**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2328-15T1

BRUCE A. PATERSON, ILEEN
CUCCARO, HORACE CORBIN and
DAVID CORBIN,

    Plaintiffs-Respondents,

v.

THE COMBINED PLANNING BOARD/
ZONING BOARD OF ADJUSTMENT OF
THE BOROUGH OF GARWOOD,

    Defendant-Respondent,

and

ANGELA VILLARAUT and SANDRO
VILLARAUT,

    Defendants-Appellants.

_____

Argued June 6, 2017 — Decided June 28, 2017

Before Judges Yannotti and Gilson.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Docket No. L-3224-
14.

Stephen F. Hehl argued the cause for
appellants (Hehl & Hehl, P.C., attorneys; Mr.
Hehl, of counsel and on the brief; Cory Klein,
on the brief).

John DeNoia argued the cause for respondents Bruce A. Paterson, Ileen Cuccaro, Horace Corbin and David Corbin (Kochanski, Baron & Galfy, P.C., attorneys; Mr. DeNoia, on the brief).

New Jersey State Bar Association, amicus curiae (Thomas H. Prol, Howard D. Geneslaw, Cameron W. MacLeod, and Michael D. DeLoreto, on the brief).

Respondent The Combined Planning Board/Zoning Board of Adjustment of the Borough of Garwood has not filed a brief.

PER CURIAM

Defendants Sandro Villaraut and Angela Villaraut (the Villarauts) appeal from an order entered by the Law Division on November 4, 2015, which reversed a decision by the Combined Planning Board and Zoning Board of Adjustment of the Borough of Garwood (Board), and remanded the matter to the Board for a new hearing. The Villarauts also appeal from an order entered by the court on January 19, 2016, denying their motion for reconsideration. We affirm in part, reverse in part, and remand the matter to the Board for further fact-finding.

## I.

The Villarauts are the owners of approximately one acre of land in the Borough of Garwood. The property is located in the Borough's RA zone, where single-family residences are permitted uses but multi-family uses are not. On March 4, 2014, the

Villarauts filed an application with the Board seeking a use variance to permit the construction on the property of a multi-family development consisting of four three-bedroom and five two-bedroom townhouses.

The Villarauts also sought bulk variances for building height, floor area, and density for the development. The Villarauts bifurcated their application and initially sought only the use and bulk variances, reserving the site plan application for a later date depending on whether the Board granted the variances.

On May 8, 2014, notice of a public hearing on the application was published in The Westfield Leader, a newspaper distributed in Garwood and other municipalities. Notices also were mailed to the owners of properties within two-hundred feet of the site of the proposed development.

The notices stated that on May 28, 2014, at 7:30 p.m., the Board would be considering an application for use and bulk variances for the proposed construction of nine multi-family units in the RA zone where multi-family uses are not permitted. The notices identified the property involved.

The notices also stated that variance relief was being sought from the zoning restrictions for maximum floor area, the number of units permitted per acre, and the principal building height, as well as such other restrictions as may be required. The notices

3

informed the public and neighboring property owners that they could appear at the scheduled hearing and present any objections they may have to the application.

On May 28, 2014, the Board held a public hearing on the application. At the start of the hearing, counsel for the Villarauts explained the variances that were being sought and stated that the Villarauts would be willing to commit to restricting occupancy in the proposed development to persons who are aged fifty-five years or older. Counsel for the Villarauts then presented expert testimony in support of the application from professional engineer Thomas J. Quinn, traffic engineer Joseph J. Staigar, architect Glenn Potter, and professional planner John McDonough.

Quinn discussed the proposed height of the buildings, noting that the buildings would have a height of thirty-six feet, which exceeds the existing thirty-foot limit. Quinn also discussed the density and floor-area ratio of the structures. He stated that the proposed residential use would eliminate the current non-conforming use on the property, and bring the property more into conformity with the intent of the Borough's zoning ordinance. Quinn asserted that the property could accommodate the proposed development.

Staigar discussed the traffic-impact study that he prepared with regard to the proposed development. He reviewed the existing roadways and traffic conditions in the area, and estimated the volume of traffic the proposed development is expected to generate. Staigar said he did not believe the proposed development would have a negative impact upon traffic. He noted that age-restricted townhouses would have less of an impact on traffic than dwellings that are not age-restricted. Staigar also discussed the safety of the proposed entrances and exits for traffic in the development.

Potter testified as to the size and interior configurations of the proposed buildings. Potter noted that the buildings each would be three stories tall. In addition, McDonough testified about the property, the location, and the development's proximity to the local train station. He discussed the purposes of zoning, and stated that granting the variances would advance several of those purposes.

The Board then gave members of the public an opportunity to comment. Four residents opposed the application. They expressed concerns about traffic, whether the project complied with the Borough's master plan, the run-off of water from the site, and whether the development was appropriate for the location. Those who opposed the application did not present any expert testimony.

The Board voted to approve the application, but conditioned the approval upon restricting occupancy in the townhouses to persons aged fifty-five years or older. Plaintiffs Bruce A. Paterson and Ileen Cuccaro were members of the Board that considered the application. Paterson voted against the application, and Cuccaro recused herself from the matter.

Thereafter, the Board memorialized its decision in a resolution dated July 23, 2014. In the resolution, the Board summarized the expert testimony and the comments of the public. The Board credited the testimony presented by Quinn, Staigar, Potter, and McDonough.

The Board found that special reasons existed for the proposed use variance, and that the project would be consistent with the Borough's master plan. The Board also found that the development would improve the aesthetics of the property, and it would have little negative impact upon the surrounding properties or upon the Borough's zone plan or zoning ordinance. In addition, the Board found that strict application of the zoning ordinance would result in a hardship to defendants.

## II.

On September 8, 2014, plaintiffs filed an action in lieu of prerogative writs in the Law Division, alleging that the notice of the hearing on the application did not comply with the Municipal

A-2328-15T1

Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, because the notice mischaracterized the nature of the relief sought. Plaintiffs also alleged that the Board's resolution was "insufficient" because it did not make the required findings of fact or "special reasons" required to obtain the use variance.

The Law Division judge conducted a hearing in the matter on October 14, 2015. The parties agreed that plaintiffs Horace Corbin and David Corbin had standing to challenge the Board's decision. Therefore, the court did not address whether Paterson and Cuccaro also had standing to maintain this action.

The judge filed an order dated November 4, 2015, reversing the Board's decision and remanding the matter to the Board for further proceedings. In an accompanying statement of reasons, the judge noted that the MLUL requires that the notice of the hearing state, among other things, "the nature of the matters to be considered." N.J.S.A. 40:55D-11.

The parties did not present the court with a copy of the actual notice used, but they agreed that the notice set forth the date, time, and place of the hearing. The notice also identified the property involved, and the location and time when maps and documents pertaining to the application would be available for inspection.

The judge found that the notice of the hearing did not comply with N.J.S.A. 40:55D-11 because it failed to inform the public or neighboring property owners that occupancy in the townhouses would be age-restricted. The judge stated that the reference in the notice to multi-family townhouses was not specific enough to inform the public and affected property owners of the proposed use.

The judge wrote that, "[i]f the public and nearby property owners had been properly apprised, it is reasonable to believe that additional individuals may have attended this meeting to object to the use." The judge decided that the matter must be remanded to the Board for a new hearing with proper notice.

The judge also discussed the sufficiency of the Board's resolution, "so that if the matter is presented again, the deficiencies can be corrected." The judge stated that the Board's factual findings regarding the grant of the use variance were insufficient because they were conclusory. The judge stated that the Board should specify those findings of fact that apply to the positive and negative criteria for the variance "and explain the rationale behind these conclusions."

On November 24, 2015, the Villarauts filed a motion for reconsideration. They presented the court with a copy of the notice used, and argued that the judge erred by finding that the hearing notice was deficient. On January 8, 2016, the judge heard oral

argument on the motion, and on January 19, 2016, the judge filed an order denying the motion, with an accompanying statement of reasons. The judge determined that there was no basis for reconsideration of her prior order. This appeal followed.

III.

On appeal, the Villarauts argue that: (1) the trial court erred by finding that the notice of the hearing did not comply with N.J.S.A. 40:55D-11; (2) the judge misapplied Pond Run Watershed Ass'n v. Township of Hamilton Zoning Board of Adjustment, 397 N.J. Super. 335 (App. Div. 2008), by holding that the hearing notice was defective; (3) the notice of the hearing does not have to inform the public of the potentially limitless number of mitigating conditions a Board might impose upon approval of a variance; (4) imposition of an age restriction on occupancy does not render the hearing a nullity; (5) it is irrelevant when the age restriction first arose, provided the Board adequately considered the condition; (6) in ruling on the adequacy of notice, the court must consider the actual form of notice employed; (7) in deciding that the notice was deficient, the court improperly considered whether members of the public could have prepared for the hearing differently; (8) neither plaintiffs nor the trial court identified any actual or hypothetical concern with the age restriction, which was a mitigating condition designed to lessen

public concern; (9) existence of members of the public who might be interested in purchasing a residential unit is not relevant to determining whether the notice was adequate; (10) plaintiffs waived their right to challenge the notice because a number of plaintiffs attended the hearing; (11) the hearing notice was sufficient because the age restriction relates to ownership and occupancy and was irrelevant to the proposed use from a municipal-land-use-notice perspective; (12) occupancy of the units could have been restricted at any time without the need for Board approval; and (13) this court should exercise original jurisdiction and affirm the Board's grant of the variances because the Board's decision was not arbitrary, capricious, or unreasonable.

We granted the New Jersey State Bar Association (NJSBA) leave to appear in this appeal as amicus curiae. The NJSBA argues that: (1) the trial court erred by imposing notice requirements that are more stringent than those provided in the MLUL; (2) the court failed to recognize that securing land use approvals is a process that requires a dialogue between a developer, the Board, and the public in a limited time period; and (3) the court's decision will undermine the finality and repose generally accorded to land use approvals.

In response to these arguments, plaintiffs argue that the trial court correctly determined that the hearing notice was deficient because the public and neighboring property owners were not informed that the proposed use would be age-restricted. They further argue that the Board's findings of fact were inadequate.

IV.

We turn first to the Villarauts' argument that the trial court erred by finding that the hearing notice did not comply with N.J.S.A. 40:55D-11. The Villarauts contend that the notice met the statutory requirements because in addition to the required information about the hearing, the notice informed the public and neighboring property owners of the nature and character of the application that the Board would be considering. They argue that the notice did not have to refer to the fact that occupancy in the proposed townhouses would be age-restricted.

When reviewing a trial court's decision regarding the validity of a local board's determination, "we are bound by the same standards as was the trial court." Fallone Props., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004). Generally, a court must give deference to the actions and factual findings of local boards and may not disturb such findings unless they are arbitrary, capricious, or unreasonable. Id. at 560. A board's decision must be based on substantial evidence in

the record. <u>Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment</u>, 172 <u>N.J.</u> 75, 89 (2002). We review any issue of law de novo. <u>Wilson v. Brick Twp. Zoning Bd. of Adjustment</u>, 405 <u>N.J. Super.</u> 189, 197 (App. Div. 2009).

It is undisputed that the MLUL required the Board to give the public and owners of properties within two-hundred feet of the property involved notice of the hearing at which the Villarauts' application would be considered. <u>N.J.S.A.</u> 40:55D-12(b). The MLUL requires that the notice

> state the date, time and place of the hearing, the nature of the matters to be considered and, in the case of notices pursuant to [<u>N.J.S.A.</u> 40:55D-12] of this act, an identification of the property proposed for development by street address, if any, or by reference to lot and block numbers as shown on the current tax duplicate in the municipal tax assessor's office, and the location and times at which any maps and documents for which approval is sought are available pursuant to [<u>N.J.S.A.</u> 40:55D-10(b)].
>
> [<u>N.J.S.A.</u> 40:55D-11.]

It is well established that public notice in accordance with the MLUL "is a jurisdictional prerequisite for a zoning board's exercise of its authority." <u>Pond Run</u>, <u>supra</u>, 397 <u>N.J. Super.</u> at 350. The notice must "fairly apprise" the public and neighboring property owners of the "nature and character of the proposed

12 <span>A-2328-15T1</span>

development." <u>Perlmart of Lacey, Inc. v. Lacey Twp. Planning Bd.</u>, 295 <u>N.J. Super.</u> 234, 237 (App. Div. 1996).

Here, the Board provided the following notice to the public and owners of property within two-hundred feet of the subject property:

> PLEASE TAKE NOTICE, that on Wednesday, May 28, 2014 at 7:30PM in the Borough of Garwood Municipal Building, Council Chambers, . . . a PUBLIC HEARING will be held by the [Board] for use and bulk variance approvals (Sections 106-91B: multi-family use not permitted in RA Zone; 106-91C(8): maximum floor area — [3500] sf. permitted, 27,020 sf. proposed; 106-91A: density — 8 units per acre permitted, 9 units per acre proposed; 106-91C(5): principal building height — 2.5 stories/30 ft. maximum, 3 stories/36 ft. proposed) and such other variances, relief and/or waivers that may be required upon an analysis of the plans and testimony at the PUBLIC HEARING on the bifurcated Application submitted by the Applicants/Owners . . . .

The notice "fairly apprised" the public and neighboring property owners with information concerning the "nature and character of the proposed development." <u>Ibid.</u>

The notice made clear that the applicant was seeking to construct multi-family structures on property zoned for residential single-family dwellings. The notice detailed the number of structures proposed for construction, and informed the public that variances were being sought from zoning requirements for building height, number of stories, and maximum floor area.

The notice described the proposed structures and informed the public of the extent to which the structures deviated from the zoning requirements for which the variances were sought.

As noted, the judge found that the notice was deficient because it did not state that occupancy in the proposed development would be restricted to persons aged fifty-five years or older. However, the fact that the units will be age-restricted does not raise a "heightened concern" to the public regarding the application. Shakoor Supermarkets, Inc. v. Old Bridge Twp. Planning Bd., 420 N.J. Super. 193, 203 (App. Div.), certif. denied, 208 N.J. 598 (2011). Indeed, the restriction of occupancy to persons aged fifty-five or older would not affect the essential use of the property for multi-family structures. The age restriction also would not affect the number of buildings to be constructed, or the other building features for which variances were requested.

Our decision in Pond Run does not compel a different result. In that case, we determined that a notice of a hearing was deficient because it informed the public that the zoning board would be considering an application for a variance for "retail/office" uses, while the proposed development included plans for a large sit-down restaurant that would seek a liquor license. Pond Run, supra, 397 N.J. Super. at 352.

14                                              A-2328-15T1

We found the "generic reference" in the notice to "retail/office uses" did not "reasonably put a neighbor, or an interested resident, on notice that a substantial restaurant was contemplated for the site." Id. at 352-53. We observed that the proposed restaurant would be open seven days per week until ten or eleven o'clock at night and that the restaurant was not an accessory use of any other building in the proposal. Id. at 353.

The concerns we expressed in Pond Run as to the notice are not present in this case. As we have explained, the notice of the hearing fairly apprised the public and neighboring property owners of the nature and character of the proposed use and the variances requested.

Our decision in Shakoor Supermarkets supports our conclusion that the notice used here met the requirements of N.J.S.A. 40:55D-11. In that case, the applicant sought site plan approval for the construction of a retail store of 150,000 square feet. Shakoor Supermarkets, supra, 420 N.J. Super. at 196. The notice did not, however, identify the store as a Walmart. Ibid. We found that the notice met the statutory requirements. Id. at 203.

We emphasized that a hearing notice does not have to be exhaustive. Id. at 201 (citing Perlmart, supra, 295 N.J. Super. at 239). The notice need only provide a "common sense description of the nature of the application, such that the ordinary layperson

could understand its potential impact upon him or her." Ibid. (quoting Perlmart, supra, 295 N.J. Super. at 239).

We concluded that the notice adequately informed the public that a major "big box" store was proposed for the site, and alerted the public to concerns typically associated with such stores. Id. at 203. We stated that none of the uses anticipated for the store raised any "heightened concern" for the public. Ibid. (quoting Pond Run, supra, 397 N.J. Super. at 354).

Here, the same conclusion applies. The hearing notice provided a common sense description of the proposed development and its impact. The limitation of occupancy to persons aged fifty-five or older did not raise a "heightened concern" for the public as to the proposed use. Indeed, as the evidence presented at the hearing showed, age-restricted multi-family dwellings are likely to have less impact upon the community than dwellings without such restrictions.

We conclude that that the hearing notice used here complied with the requirements of N.J.S.A. 40:55D-11. In view of our decision, we need not consider the other issues raised by the Villarauts and the NJSBA regarding the notice.

V.

The Villarauts note that because the trial court ruled that the hearing notice was inadequate, the court did not determine

whether the Board's decision to grant the application complied with the MLUL. The Villarauts therefore argue that we should exercise original jurisdiction and address this issue.

Rule 2:10-5 provides that "[t]he appellate court may exercise such original jurisdiction as is necessary to complete determination of any matter on review." We may exercise such jurisdiction "when there is 'public interest in an expeditious disposition of the significant issues raised[.]'" Price v. Himeji, LLC, 214 N.J. 263, 294 (2013) (quoting Karins v. City of Atlantic City, 152 N.J. 532, 540-41 (1998)). Original jurisdiction also may be exercised "to eliminate unnecessary further litigation." Ibid. We are convinced, however, that the exercise of original jurisdiction in this matter would not be appropriate.

As we noted previously, the Law Division judge stated that the Board failed to provide adequate findings of fact to support its decision granting the variances. We agree with the judge's assessment of the Board's findings, and conclude that more detailed fact-findings are necessary.

In this matter, the Villarauts sought variance relief pursuant to N.J.S.A. 40:55D-70(d), which provides that a board of adjustment has the power

> [i]n particular cases for special reasons,
> [to] grant a variance to allow departure from
> [zoning] regulations . . . to permit: (1) a

use or principal structure in a district restricted against such use or principal structure . . . .

. . . .

No variance or other relief may be granted under the terms of this section, including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.

In Medici v. BPR Co., 107 N.J. 1, 21 (1987), the Court stated that the grant of a use variance requires "an enhanced quality of proof and clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." The Court also stated that the applicant's proofs and the board's findings must reconcile the proposed use with its omission of the uses permitted in the applicable zoning district. Ibid.

The Court observed that, when a use variance is challenged, "a conclusory resolution that merely recites the statutory language will be vulnerable to the contention that the negative criteria have not been adequately established." Id. at 23. Conclusory findings in the resolution will not reflect "the deliberative and specific determination" required to satisfy the negative criteria. Id. at 25.

In her statement of reasons, the Law Division judge wrote that the Board's resolution in this case

> states special reasons exist for the proposed use variance. While the [r]esolution incorporates [ninety-four] points of testimony, this conclusory statement alone regarding special uses is insufficient. The [r]esolution also states in a conclusory fashion: that the proposed use is not inconsistent with the master plan of Garwood, there will be improvements to the aesthetics of the property, little if any negative impact upon the surrounding properties, or upon the zone plan or the zoning ordinances, and a hardship to applicant would result from the strict application of the zoning ordinance. While these statements may be supported by the record before the Board, the [r]esolution's conclusions should specify which findings of fact apply to the positive and negative criteria for the variance and explain the rationale behind those conclusions. As stated in <u>Medici</u>, a conclusory statement that merely recites the statutory language is vulnerable to the contention that the criteria have not been adequately establish[ed].

We agree with the judge's conclusion that the Board's resolution lacks the fact-finding required by <u>Medici</u>. We therefore affirm the provision of the trial court's November 4, 2016 order remanding the matter to the Board, but limit the remand to further fact-finding. On remand, the Board shall issue a new resolution, setting forth specific findings of fact to support its decision.

Affirmed in part, reversed in part, and remanded to the Board for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION