**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3750-16T4

LAKEWOOD REALTY
ASSOCIATES,

     Plaintiff-Appellant,

v.

LAKEWOOD TOWNSHIP
PLANNING BOARD and RD
LAKEWOOD, LLC,

     Defendants-Respondents.

_____

Argued January 14, 2019 – Decided February 5, 2019

Before Judges Sabatino and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2094-15.

R.S. Gasiorowski argued the cause for appellant (Gasiorowski & Holobinko, and Sills Cummis & Gross, PC, attorneys; R.S. Gasiorowski, on the briefs).

Kelsey A. McGuckin-Anthony argued the cause for respondent Lakewood Township Planning Board (Dasti, Murphy, McGuckin, Ulaky, Koutsouris & Connors, attorneys; Jerry J. Dasti, of counsel; Martin J. Buckley, on the brief).

Robert C. Shea argued the cause for respondent RD Lakewood, LLC (R.C. Shea & Associates, attorneys; Robert C. Shea, of counsel; Dina M. Vicari, on the brief).

PER CURIAM

This matter arises from the development of a commercial park in Lakewood, New Jersey. Respondent RD Lakewood, LLC ("RD Lakewood") purchased property within the project site from the initial developer, Cedarbridge Development Urban Renewal Corporation ("Cedarbridge"). [1] Cedarbridge developed the property for the Township of Lakewood. After the project site was subdivided with municipal approval, three development companies, including RD Lakewood, purchased some of the subdivided lots. The companies sought land-use approvals for various structures and uses within the project, anticipating their structures would share a water retention basin.

RD Lakewood applied to the Township Planning Board for site plan approval and certain minor variances for its portion of the project. RD Lakewood presented factual and expert testimony at the Board hearing in support of its application. One objector participated in the hearing before the Board: appellant Lakewood Realty Associates ("LRA"). Represented by

---

[1] Cedarbridge Development Urban Renewal Corporation was succeeded by Cedarbridge Development, LLC.

counsel, LRA presented arguments to the Board and cross-examined the applicant's witnesses. LRA also presented its own competing expert, who testified why, in his opinion, the Board should deny the application.

The Board approved the application in a resolution in June 2015. LRA then filed an action in lieu of prerogative writs in the Law Division, seeking to set aside the approval on various grounds, including alleged flaws in the public notice that had been issued before the Board hearing. The trial court rejected those contentions. This appeal by LRA ensued. In the meantime, RD Lakewood has refrained from starting construction, due to the pendency of the litigation and appeal.

Although we disagree with most of LRA's claims of error, we reverse in part the trial court's decision upholding the Board's approval. As amplified in this opinion, we do so for two important reasons.

First, we reverse the court's finding that the public notice issued for the Board hearing was adequate. We instead conclude the notice was materially deficient under controlling case law, including Perlmart of Lacey, Inc. v. Lacey Township Planning Board, 295 N.J. Super. 234 (App. Div. 1996), and Pond Run Watershed Ass'n v. Township of Hamilton Zoning Board of Adjustment, 397 N.J. Super. 335 (App. Div. 2008). Most significantly, the notice did not disclose

to the public and neighboring property owners that the proposed uses, which were tersely described as a "hotel" and a "bank," would include such components within the hotel as a restaurant with a liquor license and banquet facilities.

Second, we must reverse the trial court's decision on procedural grounds, because RD Lakewood impermissibly provided to the court an expert submission and other materials that had not been part of the record presented to the Board before it approved the application. In all other respects, we reject appellant's contentions.

I.

We summarize the facts and procedural history necessary for context. This case involves a proposed development within the Cedarbridge Corporate Campus ("the Campus"), which is a corporate park located in the DA-1 Cedarbridge Redevelopment Area in Lakewood. The Campus resulted from a redevelopment project spearheaded by Cedarbridge. The Township passed a resolution permitting the Mayor to execute an option agreement with Cedarbridge. On June 1, 2000, the Township and Cedarbridge executed the option agreement.[2]

---

[2] In 2010, residents of the Township challenged the Township's actions of selecting and contracting with Cedarbridge. See Shain v. Twp. of Lakewood, No. A-0824-13 (App. Div. Jan. 18, 2017). In Shain, this court affirmed in an

In 2002, Cedarbridge filed an application for general development approval and preliminary major subdivision approval for the Campus. The Department of Environmental Protection issued a Coastal Area Facilities Renew Act ("CAFRA") permit in August 2002, granting Cedarbridge permission under CAFRA to construct an office complex.

The project site at contention in this litigation is a portion of this Campus, namely Block 961.01, Lots 2.02 and 2.03. These lots resulted from two subdivisions of Block 961.01. In August 2005, the Board granted a resolution authorizing a final major subdivision for Lots 1.02 and 2 in Block 961.01. The resolution subdivided Lots 1.02 and 2 into four new lots: Lot 2.01, 2.02, 2.03, and 2.04. Pursuant to the Board's approval of a subsequent resolution in 2012, Lots 1.02 and 2.01 were further subdivided into two new lots: Lot 2.05 and 2.06.

Development Applications for the Related Lots

In 2014, defendant RD Lakewood filed a development application with the Board for the proposed construction of a bank and a hotel on Lot 2.02 with

unpublished opinion the trial court's grant of defendant's motion for involuntary dismissal of the case under Rule 4:37-2(b), thus upholding the validity of the option agreement between the Township and Cedarbridge.

a stormwater basin on Lot 2.03.[3] RD Lakewood accordingly entered into an agreement with Cedarbridge for the purchase of Lot 2.02 in July 2014.

The Township engineer, Terrence Vogt, reviewed RD Lakewood's submission in support of its development application and issued an engineering review letter in February 2015. The review letter confirmed the storm management for the project – a basin on Lot 2.03 – would be built under another company's Board-approved application. The review letter further noted a variance was requested for the rear-parking setback, proposing a setback for Lot 2.02 of five feet where twenty is required.

Furthermore, Vogt recommended RD Lakewood provide the following to the Board: a traffic analysis, a vehicular circulation plan, testimony to justify reducing the number of off-street parking spaces, an architectural rendering for the bank, testimony regarding the hotel building height, testimony regarding HVAC equipment location and proposed screening for both buildings, testimony regarding proposed loading activities at the facilities, testimony regarding if trash and recycling collection will be provided by the Township Department of

---

[3] This stormwater management basin was initially proposed for Lot 2.02, but later moved to Lot 2.03.

Public Works or by private contractor, and testimony regarding ownership and maintenance of the proposed wet well, pump station, and generator.

The Public Notice

Before the public hearings on RD Lakewood's application, the developer prepared a public notice, which was both published and duly mailed to all property owners within 200 feet of the site. The notice indicated that RD Lakewood had "applied to the Lakewood Township Planning Board for amended preliminary and final major site plan of Lots 2.02 & 2.03 in Block 961.01 on [sic] located on the corner of New Hampshire Avenue and Pine Street, in the DA-1 zoning district to construct a hotel as well as a bank[.]" (Emphasis added). The notice listed the parking setback and parking space variances requested, indicated the hearing had been scheduled for March 3, 2015 at the Lakewood Township Municipal Building at 6:00 p.m., and directed the reader to where and when maps and supporting documents could be accessed.

The Public Hearings

After being adjourned twice, the hearing on RD Lakewood's application went forward before the Board on April 14. RD Lakewood applied for a submission waiver and requested variances for a rear-parking setback and a small variance for the number of parking spaces. Counsel representing LRA, an

interested party and objector, was present at the hearing.[4] LRA's counsel asked whether, in compliance with the engineer's report, a traffic study had been submitted, and the Board's attorney acknowledged that a traffic study had not been submitted.

Brian Flannery, a licensed engineer and professional planner, appeared before the Board with RD Lakewood's counsel, Adam Pfeffer, to answer technical questions. Another expert, Scott Kennel, conducted a traffic analysis for the site and testified at the hearing about this analysis.

Flannery's testimony addressed a number of issues, including testimony requested in Vogt's review letter. Among other things, Flannery identified some differences between the approved CAFRA plan and the application, explaining those differences were to accommodate the engineering features, including shifting the basin to Lot 2.03. Flannery also testified about the parking variance, consenting to the Board's request to add two parking spots in order to eliminate the need for the variance.

LRA's counsel questioned Flannery about an easement on Lot 2.03 and about the restaurant and banquet facilities in the proposed hotel. LRA's counsel

---

[4] At the hearing, counsel for LRA at one point described his client as "Hotels Unlimited," which we gather might be a predecessor or affiliate of LRA.

asked Flannery about whether or not the parking calculation took into account the people coming to the restaurant and banquet facilities. Flannery answered that the parking calculations used are typical for hotels of this type and he felt the number of parking spaces was more than sufficient and complied with the ordinance.

Before the Board voted on the application, LRA's counsel called his own witness, Gordon Gemma, a licensed professional planner. Gemma testified to numerous plan deficiencies, such as the plan's interference with an access road on Lot 2.03 and that the plan is detrimental to the purpose of a 2013 smart growth plan. In addition, Gemma testified that, while the C1 standard for granting a variance, undue hardship, see N.J.S.A. 40:55D-70(c)(1), did not apply, neither did the C2 standard, which balances the benefits and burdens of variance relief, N.J.S.A. 40:55D-70(c)(2); Gemma posited there were no real benefits to the variances and there were detriments. When asked to elaborate, Gemma claimed having a parking lot within five feet of the adjacent property would increase the amount of fumes, headlights, and wind-blown trash in the area, as well as be a detriment to the purposes of the redevelopment plan set forth in the 2013 smart growth study. Gemma concluded his expert testimony by asserting that RD

Lakewood could develop the property in modified form without seeking the requested variances.

LRA's counsel raised a number of issues at the hearing, such as the lack of a copy of the traffic study and that an agreement about the construction and maintenance of the basin was not submitted to the Board prior to the hearing. Other proofs were presented to the Board by RD Lakewood that are not significant to this appeal.

The Board's Approval

After hearing closing arguments, the Board voted to approve the application. The application was granted with conditions, which included: the basin shall be landscaped along Pine Street, the easement on Lot 2.03 will be vacated, RD Lakewood will provide the Board's engineer and attorney with an agreement concerning proposed construction and maintenance, as well as a proposed maintenance plan for the basin for their review and comment, two additional parking spaces will be added to eliminate the need for a parking variance, and the traffic in the rear of the hotel will be one way.

The Board approved the application by a unanimous vote. On June 23, 2015, the Board adopted a resolution memorializing its corresponding findings of facts and conclusions.

The Action in Lieu of Prerogative Writs

In July 2015, LRA filed in the Law Division a timely complaint in lieu of prerogative writs seeking the reversal of the resolution approving RD Lakewood's application. RD Lakewood and the Board filed answers opposing the lawsuit.

The parties appeared before the trial court on September 7, 2016. LRA's counsel began the proceeding by noting "numerous exhibits which were made a part of appendices" and that he "thought that many of the exhibits that were attached to [respondents'] briefs as exhibits were not before the Planning Board, were not part of the record and should not be considered."

Among other things, LRA's counsel argued that, although some type of agreement existed as to the basin's construction and maintenance, that documentation had not been submitted at the Board hearings and no stormwater management plan was submitted before the hearing. Counsel argued this deprived the public of the right to consider, discuss, and raise objections to the Board.

LRA further argued the public notice was deficient because it identified RD Lakewood's application as being for an "amended site plan." Counsel

argued the application constituted a "new" application, noting the proposed bank and hotel had never previously been approved.

Moreover, LRA argued the notice was deficient because the public was never fairly apprised of what uses would be conducted on the property. All the notice says in this regard is that the property is going to be the site for a "hotel" and "bank." The notice did not mention the other uses that were anticipated with the hotel, namely, a restaurant, bar, and banquet facilities. RDI's counsel argued that, even though these accessory uses sometimes do accompany a hotel, a hotel does not necessarily include a restaurant or bar under the Township's ordinances.

Furthermore, LRA's counsel maintained the Board's approval should be reversed because the notice failed to explain that an easement was being vacated. Lastly, LRA's counsel noted numerous conditions still had to be satisfied after the application was approved.

The Trial Court's Decision

On April 3, 2017, the trial court upheld the Board's approval and dismissed plaintiff's complaint with prejudice. In its accompanying detailed written statement of reasons, the court determined, among other things:

> RD Lakewood had included architectural plans that disclosed the proposed hotel as a Courtyard [by] Marriott, which depicted meeting rooms, food prep area, lounge, bar are[a] and dining area on page A-1 of

the plans.  These are <u>common amenities in a hotel of this size associated with a national brand</u>.[5]

[(Emphasis added).]

The court determined the "conditions [on the Board's approval of the application] were reasonable, consistent with the recommendations of it[s] professional staff, and do not form a basis for vacation or reversal of the resolution of approval."  The court ruled that the Board had appropriately accepted the applicant's experts' testimony as being more credible than the opinion of the expert offered by the objector.  The court added that nothing in the record indicated the Board's discretion in weighing the positive and negative criteria of the plan was arbitrary, capricious, or unreasonable.  According to the trial court, the Board was properly afforded the opportunity to consider the issues of traffic circulation and stormwater management and acted within its discretion in deferring this consideration to its professionals.

This appeal by LRA followed.

---

[5]  The materials indicate the proposed hotel will be a Courtyard [by] Marriott.

II.

A.

Although LRA raises a host of other points on appeal, a pivotal issue before us is the legal sufficiency of the public notice that RD Lakewood posted in the newspaper and served on nearby property owners to alert interested parties to its pending application before the Board. Because this is a legal and jurisdictional issue, we review it de novo. "A board's decision regarding a question of law, such as whether it has jurisdiction over a matter, is subject to de novo review by the courts and thus is afforded no deference." Pond Run, 397 N.J. Super. at 350 (citing TWC Realty P'ship v. Zoning Bd. of Adjustment of Twp. of Edison, 315 N.J. Super. 205, 211 (Law Div. 1998), aff'd, 321 N.J. Super. 216 (App. Div. 1999)).

The Municipal Land Use Law ("MLUL"), N.J.S.A. 40:55D-1 to -163, requires an applicant to give public notice of an application for development at least ten days prior to the public hearing on that application. N.J.S.A. 40:55D-12. The MLUL requires the notice include "the date, time, and place of the hearing"; "the nature of the matters to be considered"; "an identification of the property proposed for development by street address, if any, or by reference to

14                                                              A-3750-16T4

lot and block numbers"; and "the location and times at which any maps or documents for which approval is sought are available[.]" N.J.S.A. 40:55D-11.

"Failure to provide proper notice deprives a municipal planning board of jurisdiction and renders null any subsequent action." Shakoor Supermarkets, Inc. v. Old Bridge Twp. Planning Bd., 420 N.J. Super. 193, 201 (App. Div. 2011). "Proper notice requires, among other things, that public notices of applications before a zoning board state 'the nature of the matters to be considered.'" Ibid. (quoting N.J.S.A. 40:55D-11).

The full text of the public notice issued by RD Lakewood read as follows:

> PLEASE TAKE NOTICE that RD LAKEWOOD, LLC contract purchaser, has applied to the Lakewood Township Planning Board for amended preliminary and final major site plan Lots 2.02 & 2.03 in Block 961.01 on [sic] located on the corner of New Hampshire Avenue and Pine Street, in the DA-1 zoning district to construct a hotel as well as a bank which are both permitted uses within said zone. Lots [sic] 2.02 is seeking a rear parking set back variance where 20 feet is required and 5 feet is proposed. Applicant is seeking a variance for parking where 153 spaces are required for the hotel site and 11 spaces are required for the bank site for a total of 164 spaces and a total of 162 spaces are being provided.
>
> Said application shall also include a request for any and all other variances and/or waivers that may be required by submission and discussion of the plan.

The aforesaid has been scheduled for a public hearing before the Lakewood Township Planning Board on Tuesday, March 3, 2015 at the Lakewood Township Municipal Building, 231 Third Street, Lakewood, New Jersey, at 6:00 p.m. or as soon thereafter as possible.

The application maps and supporting documents are on file in the Lakewood Township Planning Board office in the Municipal Building, 231 Third Street, Lakewood, New Jersey, and are available for public inspection ten days prior to the date of the hearing during normal business hours.

[(Emphasis added).]

In Perlmart, 295 N.J. Super. 234, this court explained the importance of the jurisdictional requirement that a developer's public notice adequately inform the community of the nature of the proposed use for which the developer is seeking a variance and other land use approvals. A properly crafted notice serves to "ensure that members of the general public who may be affected by the nature and character of the proposed development are fairly appraised thereof." Id. at 237. This is "so that they may make an informed determination as to whether they should participate in the hearing or, at the least, look more closely at the plans and other documents on file." Id. at 237-38. The notice should provide "a common sense description of the nature of the application, such that the ordinary layperson could understand its potential impact upon him

or her[.]" Id. at 239. However, "[t]he notice need not be 'exhaustive' to satisfy this standard." Shakoor Supermarkets, Inc., 420 N.J. Super. at 201 (citing Perlmart, 295 N.J. Super. at 239). Nor must the notice be couched in overly technical terms. Perlmart, 295 N.J. Super. at 238-39.

We applied these principles in Perlmart to invalidate a developer's applications for site plan approvals, variances and a conditional use permit where the public notice stated only that the applications were "for the creation of commercial lots," and did not tell the public that lots were intended to be developed as a shopping center. Id. at 237, 241. The defective notice failed to "inform the public of the nature of the application in a common sense manner" that would alert an ordinary layperson to consider obtaining further information from the plans on file and possibly appear at the hearing to object. Id. at 239.

Likewise, in Pond Run, 397 N.J. Super. 335, we applied these principles in evaluating a public notice concerning a proposed project that required use variances. We rejected in that case appellant's contention that a typographical error in the notice specifying the parcel's lot and block number made the notice jurisdictionally defective. Id. at 348-49. On that point, we concluded the description of the property was sufficiently clear to vitiate the typographical error. Ibid. However, we nullified the land use approval because of a different

17                                                                          A-3750-16T4

notice defect.  Id. at 355.  The notice merely described the proposed use – which involved a 168-seat restaurant with a proposed liquor license – as a residential mixed-use facility with "retail/office units."  Id. at 346, 353-55.  We found this uninformative description was inadequate, and set aside the zoning board's approval even though the project was already partially built.  Ibid.

The lesson of these cases is that appropriate public notice serves an important "gatekeeping" function in land use matters.  It is not sufficient for an applicant to circulate and publish an uninformative and vague notice and expect local residents to go down to municipal offices to inspect the plans in order to ascertain the critical features of the proposal.

Here, the public notice issued by RD Lakewood is likewise deficient with respect to the material characteristics of the proposed uses.  The notice states that the project will include a "bank" and a "hotel."  It does not describe the activities that are contemplated within the hotel, specifically the plan to include a restaurant, a banquet facility, and to obtain a liquor license so that alcohol will be served on the premises.  The Township's ordinances define a "hotel" as follows:

> Hotel or Resort Hotel:  A building having sleeping rooms for the temporary occupancy of guests and in which there is located a lobby or recreational area with interior hallway.

This definition omits any mention of a restaurant, a bar, or a banquet hall. In fact, the Township's ordinance contains a definition of a restaurant, as follows:

> A business establishment whose principal business is the selling of unpackaged food to the customer in a ready to consume state . . . and where the customer consumes these foods while seated at tables or counters located within the building.

The Township's zoning districts and regulations allows "hotels and/or conference centers" as permitted uses in the zone. Yet, RD Lakewood's public notice did not disclose that it envisioned this hotel to apparently function as a conference center.

Moreover, there is no mention in the notice of a bar or a liquor license.[6] As in Pond Run, 397 N.J. Super. at 354, a facility that is expected to be serving alcohol, and thereby inviting patrons who will drive to the location in order to consume intoxicating liquors, presents concerns of traffic and public safety that would reasonably be of concern to surrounding residents and property owners.

As we have noted, the trial court rejected this argument by LRA, reasoning that "the plans on file sufficiently noticed any interested party that the hotel

---

[6] Counsel for the parties advised us at oral argument, and confirmed at our request in post-argument submissions, that the proposed hotel would be eligible for a liquor license under State alcoholic beverage laws because it would have over 100 rooms. N.J.S.A. 33:1-12.20(a).

would include a restaurant/bar/banquet or meeting room amenity" and "[t]hese are common amenities in a hotel of this size associated with a national brand." We respectfully disagree.

We take judicial notice that not all hotels contain a restaurant with such amenities, including some brand-name establishments. Many hotels do not have a bar and a liquor license. Many also do not operate a banquet facility or conference center. Although the number of requested hotel parking spaces disclosed in the notice suggests the hotel would accommodate many guests, an average citizen would not likely interpret that to mean the hotel was expected to serve alcohol or operate a banquet facility. While we agree the actual "brand name" of the hotel can be omitted from the notice, Shakoor Supermarkets, Inc., 420 N.J. Super. at 201, that omission is not the source of the defect. Furthermore, as case law instructs, the adequacy of the plans on file does not cure a defective notice. See Perlmart, 295 N.J. Super. at 237-38.

Viewing the totality of the circumstances, we conclude the public notice issued by RD Lakewood was materially deficient in this respect. Given that jurisdictional defect, the Board's approval must be set aside.[7]

---

[7] We appreciate that LRA was aware of the application and extensively participated in the Board hearing. But that participation does not cure the insufficiency of the notice to the public at large.

That said, we reject the balance of appellant's criticisms of the notice. None of those other criticisms is persuasive, and we adopt the trial court's sound reasons for rejecting them.

B.

A separate basis for reversing the trial court's decision in this case stems from the fact that respondents improperly supplemented the municipal record by presenting to the court various reports and exhibits that were not presented to the Board members before they voted to approve the application. These items included partial documents related to litigation between different parties, an unexecuted "partial agreement" for purchase of real estate, an option agreement, and an "expert opinion" from Madison Title Agency, LLC. LRA timely objected to those exhibits being considered by the trial court. The court did not address this objection.

A court's review of the Board's decision should be based solely on the record before the Board. Kramer v. Bd. of Adjustment, 45 N.J. 268, 289 (1965). Although the Board is not obligated to function in a vacuum, several of the exhibits RD Lakewood presented to the trial court in defending the prerogative writs action were prepared after the Board approved the application. One such

exhibit is an expert opinion from Madison Title Agency, LLC, regarding a roadway shown going through Lot 2.03.

We disagree with respondents' characterization that these supplementary exhibits were, in essence, all items of mere "resolution compliance" that did not have to be presented to the Board members before they voted. Where, as here, an objector represented by counsel actively participated in the hearing, it was especially important that material exhibits supplied to bolster the applicant's position not be supplied after-the-fact. Had those exhibits been submitted before the trial court litigation, the objector might well have requested the Board hearing be continued or reopened, and perhaps marshalled competing expert proofs. The approval must be set aside on this independent basis.

For these discrete reasons, we reverse the trial court's ruling and invalidate the Board's decision, without prejudice to further proceedings before the Board with proper notice.

All other arguments raised on appeal lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3750-16T4